ALAN GLOVER, CARSON CITY CLERK, AND THE CARSON CITY BOARD OF SUPERVISORS, APPELLANTS, v. CONCERNED CITIZENS FOR FUJI PARK AND FAIRGROUNDS, A NEVADA CORPORATION, RESPONDENT.

No. 39601

July 25, 2002                                                  50 P.3d 546

---

*Noel S. Waters,* District Attorney, *Mark R. Forsberg,* Chief Deputy District Attorney, and *Melanie L. F. Bruketta,* Deputy District Attorney, Carson City, for Appellants.

*Smith & Harmer,* Carson City, for Respondent.

# OPINION

*Per Curiam:*

Concerned Citizens for Fuji Park and Fairgrounds submitted an initiative petition to the Carson City Clerk/Recorder, which proposed that an ordinance be enacted to preserve Fuji Park and Carson City Fairgrounds in perpetuity. Because the Carson City Board of Supervisors took no action on the initiative petition, Concerned Citizens filed the underlying petition for a writ of mandamus in the district court to compel the Clerk to place the initiative on the ballot. The district court granted the writ of mandamus and directed the Clerk and Board to place the initiative on the ballot.

The Clerk and Board filed the instant appeal challenging the district court's order and seeking to prevent the initiative from being placed on the ballot. We conclude that the initiative concerns an administrative matter and exceeds the electorate's initiative power, and that the proposed ordinance improperly restricts the Board's authority under the Carson City Charter to sell real property. We further conclude that pre-election court intervention is warranted to preclude the initiative's inclusion on the ballot. Consequently, we reverse the district court's order.

## FACTS

Concerned Citizens for Fuji Park and Fairgrounds, respondents, submitted an initiative petition to the Carson City Clerk/Recorder that proposed enactment of the following ordinance:

> The People of the City of Carson City, State of Nevada, do enact as follows: That Fuji Park and Carson City Fairgrounds

(Carson City APN 9-303-2, 3, 5 & 7; Douglas County APN 13-210-01) be maintained and improved in not less than its present size as a park in perpetuity.

The Clerk determined that the petition complied with the requirements of NRS chapter 295, and certified the petition to the Carson City Board of Supervisors. The Board took no action on the petition, and apparently voted against placing the initiative on the ballot.

Concerned Citizens then filed the underlying petition for a writ of mandamus in the district court against the Clerk and Board, seeking to compel the Clerk to place the initiative on the September 3, 2002 primary election ballot. Concerned Citizens cited NRS 295.115, which provides that if the Board fails to adopt a certified initiative petition, the petition *shall* be placed on the next primary or general election ballot.

The district court issued a writ of mandamus, directing the Clerk and the Board (collectively Carson City) to place the proposed ordinance on the September 3, 2002 ballot, or show cause why they refused to do so. Carson City moved to quash the writ and dismiss the petition on the basis that the initiative process may not be used to control the sale or use of Fuji Park or the Fairgrounds because it concerned an administrative rather than a legislative matter.

After conducting a hearing, the district court entered a written order granting the writ of mandamus and directing Carson City, under NRS 295.115, to place the initiative petition on the election ballot. Carson City filed the instant appeal challenging the district court's order, and seeking to prevent the initiative's placement on the ballot.

## DISCUSSION

### Interpretation of NRS 293.725

As a preliminary matter, Concerned Citizens argue that NRS 293.725 precludes Carson City from spending money to oppose this initiative petition. That statute provides, ''[t]he government of this state or a political subdivision of this state or an agency thereof shall not incur an expense or make an expenditure to support or oppose: 1. A ballot question [or] 2. A candidate.'' In response, Carson City asserts that it should be allowed to defend the action brought against it. Carson City further argues that this case does not involve Carson City's support or opposition to a ballot question, but involves issues concerning the initiative's constitutionality.

NRS 293.725 is a new statute, enacted in 2001.[1] It is well established that when the language of a statute is unambiguous, a court should give that language its ordinary meaning.[2] If the statutory language is susceptible to more than one reasonable interpretation, however, it is ambiguous, and we must construe it in accordance with what reason and public policy indicate the legislature intended.[3] Further, the statute's language should not be read to produce absurd or unreasonable results.[4]

Here, we conclude that the language prohibiting the government from incurring an expense ''to support or oppose'' a ballot question is ambiguous. It could, read narrowly, refer only to the government's expenditure to politically support or oppose a ballot question already placed on a ballot and set for an election. Construed broadly, the language could refer to *any* government expenditure relating to a ballot question, including expense incurred in challenging a ballot question's validity in a legal action prior to the question's inclusion on the ballot.

Since the language of NRS 293.725 is ambiguous, we look to the legislature's intent, which supports a narrow construction of the statutory language to prevent the government from incurring expense to support or oppose, for political reasons, a ballot question already placed on a ballot. The legislative history reveals that the statute was intended to prevent the government from spending money on campaigning, directly or indirectly, for or against a ballot question or candidate. There is some indication that the bill was introduced in response to past elections in which a city sponsored and paid for televised events that featured incumbent candidates in a positive light with one-sided election discussions, and circulated a city employee newsletter just two weeks before the election with only the incumbents featured.[5] Thus, the legislature did not intend to prevent the government from incurring expense in challenging the validity of a ballot question in court. A broader

---

[1]2001 Nev. Stat., ch. 294, § 3, at 1347.

[2]*McKay v. Bd. of Supervisors,* 102 Nev. 644, 648, 730 P.2d 438, 441 (1986).

[3]*Id.* at 649, 730 P.2d at 442 (citing *Robert E. v. Justice Court,* 99 Nev. 443, 445, 664 P.2d 957, 959 (1983)).

[4]*Attorney General v. Board of Regents,* 114 Nev. 388, 392, 956 P.2d 770, 774 (1998).

[5]Hearing on A.B. 443 Before the Assembly Comm. on Elections, Procedures, and Ethics, 71st Leg. (Nev., May 3, 2001) (testimony of Mike Tracey, Reno resident and prior candidate for Reno City Council, read into the record); Hearing on A.B. 443 Before the Senate Comm. on Government Affairs, 71st Leg. (Nev., May 9, 2001) (testimony from Douglas G. Smith, a lobbyist for the Citizens for a Scenic Reno).

reading of the statute could lead to an absurd result, as it would prevent the government from ever challenging an initiative's validity before placement on the ballot. Thus, NRS 293.725 does not bar Carson City's court opposition to the initiative petition in this case.

*Legislative versus administrative acts*

We next address Carson City's argument that the initiative petition is not within the scope of the initiative power because it concerns an administrative rather than a legislative act. Initiative is the power of the people to propose and enact new laws.[6] The power is contained within Article 19, Section 2(1) of the Nevada Constitution: "[T]he people reserve to themselves the power to propose, by initiative petition, statutes and amendments to statutes and amendments to this constitution, and to enact or reject them at the polls." The initiative powers provided in Article 19 "are further reserved to the registered voters of each county and each municipality as to all local, special and municipal legislation of every kind in or for such county or municipality."[7]

Carson City is considered a "county" under the Nevada Revised Statutes.[8] The procedures for county initiatives are found in NRS 295.075 to NRS 295.125. Generally, NRS 295.085(1) allows county registered voters to propose ordinances to the board of county commissioners and, if the board fails to adopt the proposed ordinance without change in substance, the voters may adopt or reject the proposed ordinance at the next primary or general election. In particular, if an initiative petition is procedurally sufficient, the board shall promptly consider it.[9] But if the board fails to adopt the proposed initiative ordinance without any change in substance within thirty days, "the board *shall* submit the proposed . . . ordinance to the registered voters of the county."[10] The county-wide vote on the proposed ordinance "must be held at the next primary or general election."[11]

This statutory authority requires the Board to place a procedurally sufficient initiative petition on the ballot. Here, the parties stipulated to the initiative petition's procedural sufficiency. Carson City argues, however, that it should not be compelled to place the

---

[6]*Forman v. Eagle Thrifty Drugs & Markets,* 89 Nev. 533, 537, 516 P.2d 1234, 1236 (1973).

[7]Nev. Const. art. 19, § 4.

[8]NRS 0.033.

[9]NRS 295.115(1).

[10]*Id.* (emphasis added).

[11]NRS 295.115(2).

initiative on the ballot because it concerns an administrative rather than a legislative act, and is thus not within the scope of the initiative power.

The Nevada Constitution expressly reserves to county and municipality voters the power to enact "all local, special and municipal *legislation* of every kind."[12] We held in *Forman v. Eagle Thrifty Drugs & Markets*[13] that this initiative power applies only to legislation; administrative acts are excepted from the initiative process.[14] *Forman* involved an initiative that amended certain Reno zoning laws to prohibit commercial or industrial use of property within 300 feet of elementary or junior high schools.[15] The citizens sought to prevent construction of a supermarket near a school. To determine whether a municipal ordinance is legislative or administrative, we set forth the following test:

> "An ordinance originating or enacting a permanent law or laying down a rule of conduct or course of policy for the guidance of the citizens or their officers and agents is purely legislative in character and referable, but an ordinance which simply puts into execution previously-declared policies, or previously-enacted laws, is administrative or executive in character, and not referable."[16]

We concluded that the initiative process does not apply to matters legislatively delegated to governing boards, such as the power to zone. Additionally, we noted that the legislature had already enacted extensive enabling legislation for zoning regulation, and "[u]nless that general law is affected by repeal or amendment by the legislature, or by referendum or initiative by the people of the state, the statute guides the zoning processes of the cities and directs the means by which it is to be accomplished."[17] Guided by these principles, we held the initiative in *Forman* to be administrative in nature, stating that "[t]he legislature has delegated the

---

[12]Nev. Const. art. 19, § 4 (emphasis added).

[13]89 Nev. 533, 516 P.2d 1234 (1973).

[14]*Id.* at 537, 516 P.2d at 1236. Other states are in accord. *See, e.g., CJE v. County of Orange,* 115 Cal. Rptr. 2d 90, 106 (Ct. App. 2002) (providing that the electorate has no power to initiate administrative acts); *Hilton Head Island v. Expressway Opponents,* 415 S.E.2d 801, 806 (S.C. 1992) (stating that administrative measures are not proper subjects for initiated ordinances); *see also* 42 Am. Jur. 2d *Initiative and Referendum* §§ 7, 8 (2000); 5 Eugene McQuillin, *The Law of Municipal Corporations* § 16.49, at 276, § 16.55, at 296 (3d rev. ed. 1996).

[15]*Forman,* 89 Nev. at 535, 516 P.2d at 1235.

[16]*Id.* at 537, 516 P.2d at 1236 (quoting *Denman v. Quin,* 116 S.W.2d 783, 786 (Tex. App. 1938)).

[17]*Id.* at 539, 516 P.2d at 1238.

power to zone to the legislative bodies of cities and towns, so that the need for a comprehensive plan might be met, and has provided means for the protection of private property through notice and public hearing."[18]

Under the principles set forth in *Forman*, we conclude that the initiative to preserve Fuji Park and Carson City Fairgrounds in perpetuity is not legislation. Rather, it constitutes an administrative act and is not subject to the initiative power of the people. The initiative involves a land use decision that has been legislatively delegated to the local government by statute. Carson City's decisions regarding its land are administrative, to be made in accordance with existing state statutes governing zoning, planning, redevelopment, preservation and sale of county property. The board of county commissioners, for instance, has the statutory power to control, manage, take care of, and preserve the county's real property.[19] NRS 244.281 gives the board authority and discretion to sell or exchange the county's property by resolution if the sale will be in the county's best interest, and that statute, as well as NRS 244.282, prescribes the manner of sale and requires notice and a public meeting under certain circumstances. Additionally, NRS 278.030 to NRS 278.265 provide for the creation of a planning commission to adopt long-term development plans and zoning regulations, and to consider any changes. These statutory provisions reflect the legislature's delegation of decisions concerning the use, sale and preservation of Carson City's real property to the local government, and provide the means to execute those decisions.

Further, the initiative does not set forth a new course of policy to guide citizens or their officers and agents regarding the way in which Carson City makes decisions about its real property. Rather, the initiative calls for the preservation of one specific park and fairgrounds. To allow the electorate to invoke such an administrative act by initiative would destroy or impede the efficient administration of governmental affairs.[20]

Our 1996 decision in *Barrows v. District Court*,[21] cited by Concerned Citizens, is not to the contrary. We did not specifically address in Barrows whether the referendum at issue was administrative or legislative. *Barrows* involved a referendum petition to repeal an ordinance that created a regional landfill and imposed a

---

[18]*Id.* at 539, 516 P.2d at 1237.

[19]NRS 244.265; NRS 244.270.

[20]*See City of San Diego v. Dunkl*, 103 Cal. Rptr. 2d 269, 280 (Ct. App.), *cert. denied*, 534 U.S. 892 (2001); *Wilson v. Manning*, 657 P.2d 251, 254 (Utah 1982).

[21]112 Nev. 339, 913 P.2d 1296 (1996).

tax to fund it. The board of county commissioners voted to keep the referendum off the ballot because the ordinance was administrative rather than legislative, and not subject to repeal by referendum.[22] In our recitation of the procedural history, we referred to a prior unpublished decision in the matter, in which we ordered the county clerk to place the referendum on the ballot, finding it unwise and unnecessary to resolve whether the ordinance was administrative or legislative prior to the election.[23] We issued the *Barrows* opinion after the referendum passed, and held that the voters' repeal of the landfill ordinance mandated a refund of the taxes already collected under the ordinance.[24] But we did not expressly consider or decide in *Barrows* whether the landfill referendum was administrative or legislative, as that issue was apparently not raised in the post-election legal proceedings. Thus, *Barrows* does not change our decision in the instant case.

### Violation of Carson City Charter

In a related argument, Carson City contends that the ordinance proposed by the initiative petition violates the Carson City Charter by prohibiting the City from selling its real property. We agree. In *City & County of San Francisco v. Patterson,*[25] the California Court of Appeal invalidated an initiative petition that would have restricted the ability of the City, County, and Unified School District of San Francisco (collectively "San Francisco") to lease and sell its property. The initiative petition specifically provided that San Francisco could not lease any of its real property for longer than five years or sell any of its real property for less than ninety percent of its fair market value, unless the transfer was approved by the voters.[26] The court held that a municipality's charter is its constitution; thus, any restriction on the board's authority to sell or lease property under the charter must be accomplished by charter amendment, not by the proposed initiative ordinance.[27] The court noted that the board of supervisors had the power to sell property for less than ninety percent of its appraised value if the sale served a public purpose. Thus, "[t]he initiative ordinance as drafted sought to change this discretionary

---

[22]*Id.* at 341, 913 P.2d at 1297.

[23]*Id.* at 341 n.3, 913 P.2d at 1297 n.3 (citing *Blackmore v. Bath,* Docket No. 26214 (Order Granting Petition for Writ of Mandamus, October 13, 1994)).

[24]*Id.* at 343-44, 913 P.2d at 1298-99.

[25]248 Cal. Rptr. 290 (Ct. App. 1988).

[26]*Id.* at 291.

[27]*Id.* at 294-95.

power of the board granted by the charter. Such attempt to *amend* the charter by the proposed initiative measure [was] patently invalid."[28]

Here, the initiative petition proposes enactment of an ordinance to preserve Fuji Park and Carson City Fairgrounds in perpetuity. But the Carson City Charter specifically gives the Carson City Board of Supervisors authority to control, hold, sell, lease, and dispose of Carson City's real property.[29] The legislature expressly established the charter for the government of Carson City,[30] and the Nevada Constitution grants Carson City all powers conferred by its charter.[31] Thus, any restriction on the Board's discretionary authority to sell or lease property under the charter must be accomplished by charter amendment, not by an initiative ordinance.[32]

Moreover, this type of perpetual restriction would necessarily bind future boards, and neither the electorate nor the board itself can bind any future boards in this manner, except by amending the charter.[33] For this additional reason, the initiative petition is invalid.

*Pre-election intervention*

Having concluded that the initiative petition is administrative and not subject to the initiative process and improperly restricts the Board's authority to sell Carson City's property under the charter, we next determine whether to intervene and declare the initiative void prior to the election. We have recognized a general rule against pre-election court intervention unless the initiative clearly and palpably violates the constitution.[34] And recently, we intervened pre-election to declare void an initiative petition that did not meet a threshold constitutional funding requirement, as the initiative required a legislative appropriation without raising a

---

[28]*Id.* at 295-96.

[29]Carson City Charter § 2.140.

[30]*Id.* § 1.010(1).

[31]Nev. Const. art. 4, § 37[A].

[32]*City & Cty. of San Francisco v. Patterson,* 248 Cal. Rptr. 290, 295 (Ct. App. 1988).

[33]*Id.* at 296.

[34]*Compare Las Vegas Chamber of Commerce v. Del Papa,* 106 Nev. 910, 802 P.2d 1280 (1990) (declining to intervene pre-election in a constitutional challenge to a corporate tax initiative that arguably might have applied in a constitutional manner), *with Stumpf v. Lau,* 108 Nev. 826, 839 P.2d 120 (1992) (intervening pre-election to declare void an initiative petition imposing term limits on federal elected officials because it clearly and palpably violated the United States Constitution).

sufficient tax to fund the appropriation.[35] But we have not previously addressed whether pre-election court intervention is warranted when an initiative petition improperly proposes an administrative measure, or otherwise exceeds the electorate's power. In *Barrows,* we cited a prior unpublished order in which we found it unwise and unnecessary to resolve whether an ordinance was administrative or legislative before the election.[36] But we did not expressly hold that pre-election intervention was unwarranted, and any inference to that effect is nonbinding dictum.

Courts generally permit pre-election review for challenges asserting that an initiative measure does not fall within the proper subject matter for legislation.[37] In particular, many courts will void, before an election, initiative petitions that do not propose legislation, but are administrative in nature.[38] We agree with these courts and conclude that pre-election intervention is warranted to declare void an initiative petition that concerns an administrative rather than a legislative act. As the initiative power under Article 19, Section 4 of the Nevada Constitution applies only to legislation, the electorate simply does not have the power to enact administrative acts through the initiative process. Nor does the electorate have the power to enact an ordinance restricting the Board's authority to sell property under the charter.[39] There is little value in putting a measure before the people that they have no power to enact.[40] Thus, the requirement that an initiative propose only legislation is a threshold requirement, and an initiative that

---

[35]*Rogers v. Heller,* 117 Nev. 169, 18 P.3d 1034 (2001); Nev. Const. art. 19, § 6.

[36]112 Nev. at 341 n.3, 913 P.2d at 1297 n.3.

[37]James D. Gordon III & David B. Magleby, *Pre-election Judicial Review of Initiatives and Referendums,* 64 Notre Dame L. Rev. 298, 313 (1989).

[38]*See, e.g., Transamerica Title Ins. Co. v. Tucson,* 757 P.2d 1055 (Ariz. 1988) (enjoining initiative measure that sought to amend zoning ordinances); *Hazelwood Yellow Ribbon Committee v. Klos,* 35 S.W.3d 457, 468 (Mo. Ct. App. 2000) (stating general rule against pre-election review of ballot measures, but recognizing exception for administrative/legislative determination); *Lane Transit Dist. v. Lane County,* 957 P.2d 1217, 1218 & n.1 (Or. 1998) (noting that initiatives concerning administrative matters are properly excluded from the ballot); *Priorities First v. City of Spokane,* 968 P.2d 431, 433 (Wash. Ct. App. 1998) (stating that courts will rule on the constitutionality of proposed initiatives before enactment when it affects administrative rather than legislative matters).

[39]*See City & Cty. of San Francisco v. Patterson,* 248 Cal. Rptr. 290, 293 (Ct. App. 1988).

[40]*See City of San Diego v. Dunkl,* 103 Cal. Rptr. 2d 269, 276-77 (Ct. App.), *cert. denied,* 534 U.S. 892 (2001).

fails to meet the threshold is void.[41] To the extent the dictum in *Barrows*[42] is inconsistent with our decision today, we disapprove it. Accordingly, we intervene pre-election in the instant case to declare the initiative petition void as beyond the scope of the electorate's initiative power.[43]

## CONCLUSION

We conclude that NRS 293.725 does not preclude Carson City from challenging the initiative's validity in this legal proceeding. We further conclude that the initiative to preserve Fuji Park and Carson City Fairgrounds in perpetuity exceeds the electorate's initiative power because it concerns an administrative rather than a legislative act and usurps the Board's authority to sell property under the Carson City Charter. We finally conclude that pre-election intervention is warranted to preclude the initiative's inclusion on the ballot. Accordingly, we reverse the district court's order that directed appellants to place the initiative on the ballot.

MAUPIN, C. J., concurring:

I would reverse, but only on the following grounds.

The initiative petition proposes enactment of an ordinance to preserve Fuji Park and Carson City Fairgrounds in perpetuity. Such ordinance clearly usurps the Carson City Board of Supervisor's power to alienate Carson City's real property. This power is vested in the board through the Carson City Charter, providing that the board has the power to control, sell, lease, and dispose of its real property.[1] The legislature expressly established the charter for the government of Carson City,[2] and the Nevada Constitution grants Carson City all powers conferred by its charter.[3] Thus, any restriction on the board's discretionary authority to sell or lease property under the charter must be accomplished by charter amendment, not by an initiative ordinance.[4]

---

[41]*See Rogers,* 117 Nev. at 173, 18 P.3d at 1036 (holding that the funding requirement under Nevada Constitution Article 19, Section 6 is a threshold content restriction, and an initiative that does not comply is void).

[42]112 Nev. at 341 n.3, 913 P.2d at 1297 n.3.

[43]Given our conclusion that the initiative petition concerns an administrative matter and violates the Carson City Charter, we need not address Carson City's additional argument that the initiative petition requires Carson City to appropriate money to preserve the park without providing the necessary tax or stream of revenue to fund the appropriation. *See Spears v. Spears,* 95 Nev. 416, 418, 596 P.2d 210, 212 (1979) (stating that this court will not decide constitutional issues that are unnecessary to the determination of an appeal).

[1]Carson City Charter § 2.140.

[2]*Id.* § 1.010(1).

[3]Nev. Const. art. 4, § 37[A].

[4]*City & Cty. of San Francisco v. Patterson,* 248 Cal. Rptr. 290, 294 (Ct. App. 1988).

Moreover, this type of perpetual restriction will necessarily bind future boards, and neither the electorate nor the board itself can bind any future boards in this manner, except by amending the charter.[5] Consequently, the electorate has no power to adopt the proposed initiative ordinance. If Concerned Citizens seek to change the board's prerogative as to its property, they must address such a proposed change through a proper charter amendment.