59 P.3d 1180 (2002)
John GARVIN, an Individual; Judy Sturgis, an Individual; Gary Pyle, an Individual; James Slade, an Individual; and Patricia A. McKay-Timm, an Individual, Petitioners,
v.
The NINTH JUDICIAL DISTRICT COURT of The State of Nevada, in and for the COUNTY OF DOUGLAS, and the Honorable David R. Gamble, District Judge, Respondents, and
Nevada Northwest, LLC, a Limited Liability Company; Douglas County, a Political Subdivision of the State of Nevada; Douglas County Board of Commissioners; and Barbara Reed, in Her Capacity as the Douglas County Clerk, Real Parties in Interest.
No. 40144.
Supreme Court of Nevada.
December 17, 2002.
Rehearing Denied February 21, 2003.
*1181 Brooke Shaw Zumpft, Minden; Patricia D. Cafferata, Reno, for Petitioners.
Scott W. Doyle, District Attorney, Douglas County, for Real Parties in Interest Douglas County, Douglas County Board of County Commissioners, and Douglas County Clerk.
Scarpello, Huss & Oshinski and Ryan J. Earl, Carson City, for Real Party in Interest Nevada Northwest.
Before the Court En Banc.

OPINION
PER CURIAM.
This case involves a sustainable growth initiative measure, which the Douglas County Board of County Commissioners approved for placement on the November 2002 ballot. The initiative proposed a limit on the number of new dwelling units that could be built annually in the Carson Valley area of Douglas County. The district court enjoined the initiative's placement on the ballot, based primarily on its conclusion that any initiative concerning a zoning matter is prohibited by Forman v. Eagle Thrifty Drugs & Markets.[1] We stayed the district court's order, and the measure was placed on the ballot as Douglas County Question Number 4; it passed.[2]
We have revisited Forman, and we conclude that a substantial portion of its foundation is no longer sound. Nevada's Constitution reserves to the people the power to propose, by initiative petition, statutes and amendments to statutes and the constitution, and to enact or reject them at the polls, and further reserves the initiative and referendum powers to the registered voters of each county and municipality as to all local, special and municipal legislation of every kind in and for the county or municipality.[3] We reaffirm Forman's holding that the initiative and referendum powers reserved to the people, although broad, are limited to legislation and do not extend to administrative matters; however, we overrule Forman to the extent it holds that: (1) the initiative power does not extend to the zoning processes of counties and cities, or other matters legislatively delegated to local governments; (2) due process requirements of notice and hearing apply to general zoning legislation by initiative; and (3) all changes to established zoning policies are administrative in nature. Finally, we conclude that the sustainable growth initiative is legislative in nature and was properly submitted to Douglas County voters on November 5, 2002.

BACKGROUND
Douglas County created a Planning Commission in compliance with NRS 278.030, and the Planning Commission prepared and *1182 adopted a comprehensive long-term master plan for the county's physical development in compliance with NRS 278.150. In April 1996, the Douglas County Board of County Commissioners amended and adopted the master plan by resolution. The master plan contains a growth management element, whose purpose is to establish policies and systems to manage orderly community growth. This section anticipates, but does not establish, a building permit allocation system:
In addition to directing growth to the places where it is most appropriate and most consistent with the Land Use Element, the County should control the rate at which growth occurs. Uncontrolled growth rates make it difficult for the County to keep up with expanded needs for roads, water, sewer, and other facilities. Unpredictable growth also makes it difficult for the County to plan for the best use of its limited groundwater resources. In order to protect both the County's financial and natural resources, the County should adopt a building permit allocation system covering residential uses. The allocation system will allow for a predictable growth rate, which provides for an averaging of peaks and valleys of growth over time. This provides for an orderly basis to plan and fund infrastructure and protect the groundwater resource. The residential permit allocation system should be tied to both the capital improvements program and to hydrological studies. Therefore, a building permit allocation system should be designed to maintain an average rate over time.
This section further states that the permit allocation system should not be implemented until after the County adopts a capital improvements plan and growth rates indicate a need for an allocation system, and that growth rates should be set in conjunction with the budget process. In addition, this section lists issues to be addressed in the Development Code, which would codify the allocation system.

THE INITIATIVE
Petitioners are five individual Douglas County residents who circulated an initiative petition proposing as follows:
The People of the County of Douglas, State of Nevada, do enact as follows:
SUSTAINABLE GROWTH INITIATIVE: No more than 280 new dwelling units shall be built annually in Douglas County, exclusive of the area regulated by the Tahoe Regional Planning Agency (TRPA), except in a disaster emergency declared by the Board of County Commissioners.
The initiative petition was submitted to Barbara Reed, Douglas County Clerk-Treasurer and elections officer, on June 10, 2002, and certified as legally sufficient by her on June 27, 2002. Although the Board of County Commissioners declined to adopt the building cap, the Board approved the initiative's placement on the 2002 general election ballot as Douglas County Question Number 4.
On July 24, 2002, Nevada Northwest LLC filed in the Ninth Judicial District Court a petition for a writ of mandamus or, in the alternative, complaint for declaratory and injunctive relief to keep the initiative off the ballot. Nevada Northwest owns real property in Douglas County, for which it received from the Douglas County Commissioners, in December 2001, specific plan approval for a development with 376 new dwellings.
The matter proceeded to a bench trial on August 14, 2002. The district court concluded that the initiative is administrative, not legislative, and enjoined its placement on the ballot. The court's decision rested primarily on Forman's holding that, when a zoning policy has been established and the process for making zoning changes has been committed to local planning commissions and governing boards, as is the case in Nevada, zoning changes are administrative and not referable.[4] The court also concluded that the sustainable growth initiative is administrative rather than legislative in nature under the test stated in Forman and recently restated in Glover v. Concerned Citizens for Fuji *1183 Park.[5] In its decision, however, the district court expressed concern that Forman's analysis resembles legislative preemption analysis, and questioned its validity in the context of the state constitution's reservation of the initiative and referendum power to the people. We agree that Forman's reasoning needs reconsideration.

DISCUSSION
Forman involved two different zoning proposals and the process of referendum as well as initiative. Referendum is the electorate's power to approve or disapprove already-enacted legislation, while initiative is the electorate's power to directly enact legislation by popular vote. In 1967, Eagle Thrifty Drugs sought a zoning change for a three and one-half acre parcel it owned in a Reno residential neighborhood so that it could build a supermarket. The city planning commission denied Eagle's application, but on appeal the Reno City Council granted the application in Ordinance No. 1880.[6]
William Forman and others then instituted a class action against Eagle and the City. The district court found that the City Council acted improperly by enacting the ordinance, and in August 1970 granted Forman's motion for summary judgment on the cause of action seeking to restrain construction of a supermarket on the rezoned parcel. Before the summary judgment was formally entered in October 1970, however, Reno residents approved Ordinance No. 1880 in a referendum election. Reno residents also adopted by initiative a Reno zoning law amendment that prohibited industrial or commercial property use within 300 feet of property used for elementary or junior high school purposes. Since the Eagle property rezoned by Ordinance No. 1880 was located within 300 feet of an elementary school, the two measures clearly conflicted.[7]
After the election, the district court reopened the class action on Eagle's motion, and vacated and set aside its October 1970 summary judgment. All other causes of action, which are not identified in the opinion, had been dismissed, and the court granted summary judgment in Eagle's favor on the sole remaining cause of action, which sought to restrain the supermarket's construction. Forman was given leave to file a supplemental complaint attacking the referendum ordinance. After trial, the district court entered final judgment in Eagle's favor and affirmed the zoning change.[8] The court found that the zoning change permitting a supermarket, which was enacted by Ordinance No. 1880 and approved by referendum, was not inconsistent with the City's comprehensive planning objectives, would not materially affect the land use district's residential character and was not an arbitrary or unreasonable exercise of the police power.[9]
On appeal, the class action plaintiffs argued: (1) that City Ordinance No. 1880, which rezoned the Eagle parcel, was void and its subsequent approval by referendum was a nullity; and (2) that the initiative measure, which prohibited commercial use of property within 300 feet of certain schools, was inconsistent with the referendum measure and the initiative should prevail since it passed by more votes.[10]Forman held that "neither the referred measure nor the initiative proposal were proper subjects to be presented to the voters pursuant to the initiative and referendum provisions of the Nevada Constitution."[11]
In reaching its decision, the Forman court first discussed the nature of the initiative and referendum power reserved to the people, and noted that these powers are very broad. The court further observed that the power extends only to legislation, and that administrative acts are excepted. The court then quoted a Texas case that presented an "oft-used test" for determining whether a municipal ordinance is legislative or administrative:

*1184 "An ordinance originating or enacting a permanent law or laying down a rule of conduct or course of policy for the guidance of the citizens or their officers and agents is purely legislative in character and referable, but an ordinance which simply puts into execution previously-declared policies, or previously-enacted laws, is administrative or executive in character, and not referable."[12]
The Forman court noted that although the legislative-administrative dichotomy is often vague, that vagueness gives courts leeway in balancing two competing interests: protecting government from unwarranted harassment and protecting benefits to be won through direct legislation.[13]
Unfortunately, after establishing this analytical framework, the Forman court did not apply it to the referendum or initiative at issue. Had it done so, it might well have decided that the amendment enacted by initiative, which established a new, permanent city-wide land use policy creating an industrial/commercial buffer zone around elementary and junior high schools, was legislative, whereas the ordinance approved by referendum, which simply rezoned a single three and one-half acre parcel owned by one entity, was administrative. Instead, the court decided that zoning is not subject to the initiative and referendum process.
The Forman court agreed that the state's initial decision to adopt zoning laws to regulate building construction and land use is a legislative matter subject to referendum. But the court ruled that once the policy has been established, and the planning commission and city council have been given the authority to make changes and grant exceptions, all such action is administrative and not referable.[14] (Thus, Reno residents could not validly approve Ordinance No. 1880, which rezoned a parcel of land, by referendum.) The Forman court then stated that Reno residents also could not adopt an amendment to the zoning law by initiative ballot, for "similar and additional reasons."[15]
Without discussing whether local land use is a matter of statewide concern, the Forman court decided that the Legislature's delegation of land use and zoning matters to local governments rendered these matters completely off-limits to direct citizen action.[16] The court then added that local governing bodies must comply with constitutional due process requirements when changing land use classifications, and specifically must follow statutory notice and hearing requirements.[17] These statutory notice and hearing requirements do not expressly apply to the referendum and initiative processes, and the court did not consider whether the different processes governing referenda and initiatives might separately satisfy due process concerns or even whether any valid due process concerns existed in the first place. The court also did not consider the interplay between the Nevada Constitution's reservation of the initiative and referendum power to the people, and the Legislature's statutory delegation of the state's zoning power to local governments. The court simply adopted constitutional dictum from a 1929 California case, Hurst v. City of Burlingame,[18] which states that statutory notice and hearing requirements must be met to satisfy due process whenever proposed zoning laws may affect property rights.[19]
Building on this theme, the Forman court then adopted the holding from a 1954 Utah case, Dewey v. Doxey-Layton Realty Co.,[20] which states that when residents try to initiate zoning without following the statutory notice and hearing procedures, they are, in effect, attacking the state statute under which they claim zoning power, and until the *1185 state's zoning legislation is repealed or amended by the legislature or by the people through referendum or initiative, statutory procedures must be followed.[21]
Finally, the Forman court affirmed the district court's judgment that the Reno City Council acted properly in enacting Ordinance No. 1880.[22]
Forman's ruling that zoning is not subject to the initiative and referendum process lacks a stable foundation. This fundamental instability is revealed by an examination of the California and Utah authorities upon which the ruling rests.

The California authority
In 1911, California amended its constitution to reserve the power of initiative and referendum to county and city electors, and to authorize the Legislature to establish procedures facilitating the electorate's exercise of its right. The California Legislature subsequently enacted statutes providing for the circulation of petitions, calling elections and other procedures required to enact initiative and referendum measures.[23]
In 1927, the California Supreme Court first applied the 1911 amendment to zoning matters in Dwyer v. City Council of Berkeley,[24] and directed the Berkeley City Council to submit a zoning ordinance it had enacted to referendum. The Dwyer court reasoned that since the city council had the authority to enact legislative zoning ordinances, the people also had the power to enact or pass upon zoning ordinances by initiative or referendum.[25] The court rejected an argument that the referendum denied affected persons the right, granted by municipal ordinance, to appear before the city council and be heard. The court explained that
all persons interested in the measure had to the moment of its adoption [by the city council] an opportunity to appear and oppose or advocate the passage of the proposed ordinance. So far as the adoption of the ordinance was concerned, no right was denied them. By the petition for a referendum the matter has been removed from the forum of the council to the forum of the electorate. The proponents and opponents are given all the privileges and rights to express themselves in an open election that a democracy or republican form of government can afford to its citizens.... It is clear that the constitutional right reserved by the people to submit legislative questions to a direct vote cannot be abridged by any procedural requirements....[26]
Two years later, in Hurst v. City of Burlingame,[27] the California Supreme Court invalidated a zoning ordinance adopted by city electors under their constitutional initiative power. An affected property owner, contending that he had been denied the right to a public hearing established by the state's Zoning Act of 1917, had successfully sued to enjoin enforcement of the ordinance.[28] On appeal, the Hurst court began with the proposition that an ordinance proposed by electors must constitute legislation that the legislative body has the power to enact, and decided that since the City's board of trustees could not lawfully enact a zoning ordinance without complying with the state law's notice and hearing requirements, the voters could not adopt such an ordinance by initiative.[29]
To reach this result, the Hurst court presumed a conflict between the state's initiative procedural law and its zoning law, and resolved it by deeming the zoning act, which was a special statute dealing with a particular subject, as controlling over the initiative *1186 procedural law, which was general in scope.[30] The court distinguished Dwyer in part on the ground that it upheld a referendum, and thus persons had already been given notice and a hearing when the ordinance was originally enacted, and ignored Dwyer's observation that the right to initiate legislation exists if the right of referendum can be invoked.[31] And, although the court held that the Burlingame initiative was invalid for noncompliance with the state zoning law, the court added as dictum a comment that later overshadowed its statutory holding:
When the [state zoning] statute requires notice and hearing as to the possible effect of a zoning law upon property rights[,] the action of the legislative body becomes quasi judicial in character, and the statutory notice and hearing then becomes necessary in order to satisfy the requirements of due process and may not be dispensed with.[32]
In 1974, a year after Forman was decided, the California Supreme Court decided San Diego Building Contractors Ass'n v. City Council of San Diego,[33] and expressly disapproved Hurst's constitutional dictum. In deciding that a San Diego City Charter provision that required the planning commission to provide for notice and hearing did not impinge on the electorate's right to initiate zoning legislation, the court rejected an argument that affected property owners had a constitutional due process right to notice and hearing before any zoning law could be enacted. The court explained that the entire due process argument was founded on an erroneous premise, since our nation's legal system permits the enactment of statutes of general application without affording each potentially affected person notice and hearing; due process requires notice and hearing only in quasi-judicial or adjudicatory settings, and not with respect to the adoption of general legislation.[34] The court further rejected an argument that Hurst and later cases relying upon Hurst establish the constitutional principle that notice and hearing are required before zoning legislation may be enacted. The court explained that Hurst rested exclusively on statutory interpretation, not on constitutional principles, and that later cases misconstruing Hurst's notice and hearing language did so in pure dictum.[35] The court concluded that San Diego's electors could validly enact the zoning ordinance at issue, which established a uniform maximum height for buildings erected along the city's coast in the future, through the initiative process.[36]
Two years later, in Associated Home Builders v. City of Livermore,[37] the California Supreme Court expressly overruled Hurst's holding that the state zoning act's notice and hearing requirements applied to zoning ordinances enacted by initiative. The court began its analysis by observing:
At first glance it becomes apparent that something must be wrong with the reasoning in Hurst. Starting from a premise of equalitythat the voters possess only the same legislative authority as does the city councilHurst arrived at the conclusion that only the council and not the voters had the authority to enact zoning measures. Thus in the name of equality Hurst decrees inequality. The errors which lead to this non-sequitur appear after further analysis.[38]
The court then explained how Hurst went wrong.
*1187 First, Hurst erroneously contrived a conflict between state zoning statutes and initiative statutes, when none existed, since the Legislature plainly drafted the notice and hearing requirements with a view toward ordinances adopted by city council vote and never intended that they apply to the enactment of zoning initiatives.[39] Second, Hurst erroneously treated the case as involving a conflict between two statutes of equal statusone governing zoning and one governing initiative proceduresand overlooked a crucial distinction: the right of initiative is guaranteed by the state's constitution, and the initiative statute simply spells out procedures for its exercise. Thus, interpreting the state zoning law's hearing and notice requirements to bar initiative land use ordinances would be of doubtful constitutionality, while all such doubt would dissolve by interpreting the zoning law to limit the notice and hearing requirements to ordinances enacted by city councils. In addition, the zoning law's status as a special statute would not support Hurst, since special legislation is still subject to constitutional limitations.[40] Third, Hurst erred in distinguishing Dwyer on the ground that Dwyer involved a referendum on a zoning ordinance, since Dwyer itself pointed out that "`if the right of referendum can be invoked, the corollary right to initiate legislation must be conceded to exist."'[41] Resting upon the well-established precepts that apparently conflicting statutes should be reconciled if possible, that a statute should be construed to eliminate doubts about its constitutionality, and that the initiative power should be broadly construed with all doubts resolved in its favor, the court concluded that Hurst was incorrectly decided and overruled it.[42]

The Utah authority
In 1954, the Utah Supreme Court decided Dewey v. Doxey-Layton Realty Co.,[43] and relied heavily on Hurst in deciding that Salt Lake City voters could not initiate a residential rezoning ordinance even if it was legislative instead of administrative. The court began its analysis by acknowledging that the state's constitution reserved to voters the power to initiate legislation and to require that legislation be submitted to them by referendum for approval or rejection, then observed that the line drawn between administrative and legislative functions was not the only limitation on this power.[44] The court illustrated its point by citing cases, from several other states, holding that the powers of initiative and referendum did not extend to matters such as appropriations, tax assessments and utility rate regulations.[45]
The Dewey court then considered whether the initiative and referendum powers extend to zoning matters. The court initially observed that many cases apply the provisions of a referendum act to zoning ordinances, but the court knew of no judicial authority that accepted zoning by initiative.[46] the court cited Hurst as authority "[i]n point on this matter and holding that the constitutionally reserved power of initiative does not apply to a zoning ordinance,"[47] and presented the Hurst court's reasoning in a long quote, which included the constitutional dictum and the holding that California's Zoning Act controlled over its initiative law.[48]
The Dewey court rejected the initiative proponents' argument that the Hurst case was not controlling because the California court did not spell out the constitutional *1188 question involved and because the constitution's reservation of the initiative and referendum power to the people is supreme as to laws enacted by the state's various lawmaking bodies.[49] The court agreed, but decided that it could not "give the principle the application contended for."[50] Instead, the court expanded on Hurst's rationale.
According to Dewey, the Utah Legislature acted within its power and delegated to local legislative bodies the power to zone, so that the need for a comprehensive plan might be met, and provided means for the protection of private property through notice and public hearings.[51]Dewey concluded:
Thus, when appellants seek to initiate rezoning within the city without complying with the zoning statute, they are, in effect, attacking collaterally the very statute under which they claim their power to zone....
Appellants agree that the legislative body of the city has broad discretionary powers with regard to zoning of the city and that such body could not zone without complying with the procedural due process afforded by the statute. For the same reason, the electors of the city cannot by-pass those provisions of the statute as long as the zoning statute remains in force. The state legislature has here acted within its powers and unless that general law is affected by repeal or amendment by the legislature, or by referendum or initiative by the people of the state, the statute guides the zoning process of the cities and directs the means by which it is to be accomplished.[52]
The Utah Supreme Court has not overruled Dewey, but it has limited it to zoning by initiative. Ten years after Dewey, in Bird v. Sorenson,[53] the court did not even mention Dewey when it ruled that a city council's ordinance rezoning property from residential to commercial use was administrative, rather than legislative, and was therefore not subject to referendum. The Bird court concluded:
If each change in a zoning classification were to be submitted to a vote of the city electors, any master plan would be rendered inoperative. Such changes are administrative acts implementing the comprehensive plan and adjusting it to current conditions.[54]
In 1982, in Wilson v. Manning,[55] the Utah court reaffirmed its holding in Bird, and clarified its approach to zoning by initiative or referendum. The court acknowledged that its prior case law characterized the enactment of zoning laws and ordinances as legislative functions, and stated that the original enactment of a zoning ordinance would generally be subject to referendum.[56] The court noted that Dewey was not to the contrary, because an ordinance subjected to referendum has presumably been enacted in compliance with statutory notice and hearing requirements, whereas those requirements preclude voters from initiating zoning measures.[57] The court then stated that ordinances implementing the basic zoning enactment, such as by exceptions and variances, would generally be considered administrative acts not subject to referendum.[58] Although the Wilson court deemed the 10-acre rezoning ordinance before it administrative, and therefore not subject to referendum, it held out the possibility that major rezoning could be subject to referendum. The court stated that some amendments could constitute such material variances from the governmental unit's basic zoning law that it would make new law rather than merely implement and adjust the comprehensive plan.[59] The Utah Legislature subsequently enacted statutes *1189 governing zoning referendum filing standards and procedures.[60] Zoning initiatives are still not allowed in Utah.

Reformulating Nevada's approach
Forman's conclusion that the initiative's use in zoning is unconstitutional, because property owners have a Fourteenth Amendment due process right to notice and a hearing in matters affecting property rights and the initiative process does not afford affected persons notice and a hearing, is fundamentally flawedas the California Supreme Court observed in San Diego Building Contractors Ass'n.[61] On this point, the California court quoted Justice Oliver Wendell Holmes, who wrote the following for a unanimous United States Supreme Court in Bi-Metallic Co. v. Colorado:[62]
"Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule."
Citing several notable United States Supreme Court cases regarding due process, the California court pointed out that they clearly establish that the due process requirements of notice and hearing apply only to governmental actions of an adjudicatory nature.[63]
Forman's conclusion that voters cannot bypass statutory notice and hearing requirements and enact zoning measures through the constitutional initiative process is also fundamentally flawed. Nevada's Constitution reserves to the people the power to propose, by initiative petition, statutes and amendments to statutes and the constitution, and to enact or reject them at the polls, and further reserves the initiative and referendum powers to the registered voters of each county and municipality as to all local, special and municipal legislation of every kind in and for the county or municipality.[64] By its plain terms, this reservation of power is limited to legislation, but it necessarily includes zoning legislation.
Hurst, Dewey and Forman reason essentially as follows: the local initiative and referendum power can be no greater than the local legislative body's power; state zoning laws limit the local legislative body's power procedurally; since the local legislative body cannot pass zoning laws without complying with statutory procedural restrictions, the people's power is similarly limited; the initiative process is hopelessly inconsistent with statutory zoning requirements because no public hearing is held before the planning commission or the local legislative body; and because the initiative procedure does not encompass these steps, it cannot be used to enact zoning legislation.[65] This reasoning *1190 does not give the constitutional provisions the authority they deserve.
As the California Supreme Court recognized when it reconsidered Hurst's holding, although the state legislature can specify the manner in which local legislative bodies enact zoning ordinances, legislation that permits council action but effectively bars initiative action would likely be unconstitutional.[66] In other words, if a county board of commissioners or city council can enact zoning legislation, the county and city voters can do the same by initiative. This interpretation truly gives the voters the same legislative authority as the local governing body. It also recognizes that the initiative process offers protections generally equivalent to statutory notice and hearing requirements. The filing and circulation of an initiative petition, and the adversary nature of a political campaign, provide ample opportunity for all viewpoints to be heard.[67] Other states that prohibit zoning by initiative or referenda generally do so on the basis of Hurst or Dewey or both,[68] or by construing a specific statutory grant of zoning authority as taking precedence over a general statutory, not constitutional, grant of initiative and referenda power.[69] We decline to follow this line of authority.
Although we conclude that due process is not a concern and the electorate is not bound by the statutory requirements that the local legislative bodies must follow, Nevada's initiative and referendum powers are still limited by the Constitution to legislation.
Forman's general discussion of the distinction between legislative matters and administrative matters is sound, though limited in scope. But to the extent that Forman can be read to suggest that once a county or city adopts a zoning policy under a statutory grant of authority, all changes are administrative, its reasoning is flawed. Virtually all local government actions are taken pursuant to statutory authority, either directly or indirectly, so characterizing local zoning action as administrative based solely on this factor renders the legislative-administrative distinction practically meaningless.[70] Zoning is not an end in itself, but rather a means of achieving various community objectives, and as a community's goals and beliefs change, so too must its land use policies. Zoning measures should be subjected to the same tests as other measures.
Consequently, based on the foregoing analysis, we overrule Forman to the extent that it holds that: (1) the initiative power does not extend to the zoning processes of counties and cities, or other matters legislatively delegated to local governments; (2) due process requirements of notice and hearing apply to general zoning legislation by initiative; and (3) all changes to established zoning policies are administrative in nature. We reaffirm Forman's holding that the initiative and referendum powers reserved to the people are very broad, but are limited to legislation. In addition, we reaffirm Forman's test for distinguishing between legislative and administrative measures, and we reaffirm our recent clarifications of the Forman test in Glover v. Concerned Citizens for Fuji Park[71] and Citizens *1191 for Train Trench Vote v. Reno.[72]
Applying Forman's test here, we consider whether the sustainable growth initiative measure changes the course of policy for the guidance of Douglas County's citizens or their officers and agents, and is therefore legislative, or whether it simply executes established policies, and is therefore administrative.[73] We conclude that the sustainable growth measure is legislation. The Douglas County Master Plan anticipated a future limitation on growth, but it did not establish one. The initiative's proponents evidently decided that the time was ripe, and chose to change the Master Plan by establishing a general building cap on residential units to regulate growth. This change is policy-driven, and is legislative in character. Executing this new policy will be an administrative matter.
Having decided that the sustainable growth initiative meets the threshold constitutional requirement that it propose legislation, we decline to address the County's and Nevada Northwest's other arguments regarding the measure's substantive validity in this proceeding. We reiterate that, although an initiative or referendum is subject to pre-election challenge to its threshold validity,[74] when a proposed initiative or referendum meets all threshold procedural requirements, pre-election review of substantive challenges is not generally permitted.[75] The County and Nevada Northwest are not left without a judicial remedy, however, since the substantive validity of all legislation may be challenged after it is enacted.

CONCLUSION
The sustainable growth initiative measure that was submitted to the Douglas County electorate as Douglas County Question Number 4 is legislation under the Forman test, not an administrative act. Thus, the district court should not have enjoined the measure's placement on the ballot. Accordingly, we vacate our stay and we grant the petition; the clerk of this court shall issue a writ of mandamus directing the district court to vacate its August 20, 2002 order in its entirety.[76]
MAUPIN, J., concurring.
I join in the result reached by the majority, with the following qualifications. First, because of my disqualification in Citizens for Train Trench Vote v. Reno,[1] I am not in a position to "re-affirm" that decision. Second, I stand by my separate opinion in Glover v. *1192 Concerned Citizens for Fuji Park,[2] and thus do not re-affirm the majority decision in that case.
I also want to separately comment upon the fact that we have not addressed the substantive validity of the Sustainable Growth Initiative, which the real parties in interest have raised in their response to the instant petition. Because the petition was brought as a pre-election challenge, we have only resolved the threshold question of whether the Initiative belonged on the ballot. Although the measure was approved by the voters of Douglas County while the instant petition was pending before us, we have deferred ruling on the substantive viability of the Initiative until separate litigation is brought in response to its actual enforcement.
NOTES
[1] 89 Nev. 533, 516 P.2d 1234 (1973).
[2] We note that although the election has ended, this writ petition is not moot because the initiative's threshold validity falls within an exception to the mootness doctrine for matters that are capable of repetition, yet evading review. See Binegar v. District Court, 112 Nev. 544, 548, 915 P.2d 889, 892 (1996).
[3] Nev. Const. art. 19, §§ 2, 4.
[4] 89 Nev. at 537-38, 516 P.2d at 1237.
[5] 118 Nev. ___, 50 P.3d 546 (2002).
[6] 89 Nev. at 534-35, 516 P.2d at 1235.
[7] Id. at 535, 516 P.2d at 1235.
[8] Id.
[9] Id. at 539, 516 P.2d at 1238.
[10] Id. at 536, 516 P.2d at 1236.
[11] Id. at 536-37, 516 P.2d at 1236.
[12] Id. at 537, 516 P.2d at 1236 (quoting Denman v. Quin, 116 S.W.2d 783, 786 (Tex.Civ.App. 1938)).
[13] Id.
[14] Id. at 537-38, 516 P.2d at 1237.
[15] Id. at 538, 516 P.2d at 1237.
[16] Id.
[17] Id. at 538-39, 516 P.2d at 1237.
[18] 207 Cal. 134, 277 P. 308 (1929).
[19] 89 Nev. at 539, 516 P.2d at 1237.
[20] 3 Utah 2d 1, 277 P.2d 805 (1954).
[21] 89 Nev. at 539, 516 P.2d at 1237-38.
[22] Id. at 539, 516 P.2d at 1238.
[23] See discussion in Associated Home Builders v. City of Livermore, 18 Cal.3d 582, 135 Cal.Rptr. 41, 44-46, 557 P.2d 473, 476-78 (1976).
[24] 200 Cal. 505, 253 P. 932 (1927).
[25] Id. at 934-36.
[26] Id. at 936.
[27] 207 Cal. 134, 277 P. 308 (1929).
[28] Id. at 309-10.
[29] Id. at 311.
[30] Id.
[31] Id. at 311-12. We again note that the distinction arises from the different procedures employed for referenda and initiatives. Referenda give the voters an opportunity to approve or veto legislation already enacted, whereas initiative petitions give the voters an opportunity to directly enact legislation. In Forman, both procedures were employedcity voters approved the zoning change already enacted by the City Council and directly enacted legislation restricting commercial and industrial land use near schools.
[32] Id. at 311.
[33] 13 Cal.3d 205, 118 Cal.Rptr. 146, 152-53, 529 P.2d 570, 576-77 (1974).
[34] Id. at 149-52, 529 P.2d at 573-76.
[35] Id. at 152-53, 529 P.2d at 576-77.
[36] Id. at 147, 154, 529 P.2d at 571, 578.
[37] 18 Cal.3d 582, 135 Cal.Rptr. 41, 557 P.2d 473 (1976).
[38] Id. at 47, 557 P.2d at 479.
[39] Id.
[40] Id. at 47-48, 557 P.2d at 479-80.
[41] Id. at 48, 557 P.2d at 480 (quoting Dwyer v. City Council, 200 Cal. 505, 253 P. 932, 934 (1927)).
[42] Id.
[43] 3 Utah 2d 1, 277 P.2d 805 (1954).
[44] Id. at 806-07.
[45] Id. at 807-08.
[46] Id. at 808.
[47] Id. The court also cited Saks & Co. v. City of Beverly Hills, 107 Cal.App.2d 260, 237 P.2d 32 (1951), but Saks simply applied Hurst's holding. The Saks court, stating that it was bound by the Hurst decision, ruled that a zoning ordinance adopted by city electors without complying with the state zoning act's notice and hearing provisions was void. 237 P.2d at 37.
[48] 277 P.2d at 808.
[49] Id. at 808-09.
[50] Id. at 809.
[51] Id.
[52] Id. (citations omitted).
[53] 16 Utah 2d 1, 394 P.2d 808 (1964).
[54] Id.
[55] 657 P.2d 251 (Utah 1982).
[56] Id. at 253.
[57] Id. at 253 n. 2.
[58] Id. at 253.
[59] Id. at 254.
[60] See Citizen's Awareness Now v. Marakis, 873 P.2d 1117 (Utah 1994) (discussing the legislation, clarifying the distinction between administrative and legislative matters, and interpreting the statutory provision that excepts "individual property zoning decisions" from the referendum process).
[61] 118 Cal.Rptr. at 149, 529 P.2d at 573.
[62] Id. (quoting Bi-Metallic Co. v. Colorado, 239 U.S. 441, 445, 36 S.Ct. 141, 60 L.Ed. 372 (1915)).
[63] Id. at at 150 & n. 4, 529 P.2d at 574 & n. 4 (citing such cases as Mullane v. Central Hanover Tr. Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)); see also Allison v. Washington County, 24 Or.App. 571, 548 P.2d 188, 190-91 (1976) (distinguishing between legislative and quasi-judicial matters; characterizing the former as action affecting a large area consisting of many parcels of property in disparate ownership, such as an ordinance imposing a 30-foot height restriction on future buildings in a coastal zone, and the latter as action applying a general rule to a specific interest, such as a zoning change affecting a single piece of property, a variance, or a conditional use permit; and recognizing that "a substantial majority of cases hold there is no constitutional right to notice or hearing" in the legislative-action context).
[64] Nev. Const. art. 19, §§ 2, 4.
[65] Craig N. Oren, Comment, The Initiative and Referendum's Use in Zoning, 64 Cal. L.Rev. 74, 100-101 (1976).
[66] Associated Home Builders, 135 Cal.Rptr. 41, 557 P.2d at 480.
[67] Oren, supra note 65, at 104-05.
[68] E.g., Transamerica Title Ins. Co. v. Tucson, 157 Ariz. 346, 757 P.2d 1055 (1988); Gumprecht v. City of Coeur d'Alene, 104 Idaho 615, 661 P.2d 1214 (1983); Elliott v. City of Clawson, 21 Mich. App. 363, 175 N.W.2d 821, 823-24 (1970); State v. Donohue, 368 S.W.2d 432 (Mo.1963).
[69] E.g., I'On, L.L.C. v. Town of Mt. Pleasant, 338 S.C. 406, 526 S.E.2d 716, 719-21 (2000); see also Hancock v. Rouse, 437 S.W.2d 1 (Tex.Civ. App.1969) (interpreting municipal charter and holding that zoning requires administrative expertise and is not subject to initiative).
[70] Town of Whitehall v. Preece, 288 Mont. 55, 956 P.2d 743, 749 (1998).
[71] 118 Nev. ___, 50 P.3d 546. We reaffirm our conclusion that the initiative to preserve Fuji Park and the Carson City Fairgrounds in perpetuity was administrative in nature because it did not establish a new course of policy. We disapprove of the opinion to the extent that it follows Forman's holding that the initiative power does not extend to the zoning processes of counties and cities, due process requirements of notice and hearing apply to general zoning legislation by initiative, and all changes to established zoning policies are administrative in nature.
[72] 118 Nev. ___, 53 P.3d 387 (2002). We reaffirm our conclusion that the initiative to prevent construction of a train trench within the existing right-of-way through Reno was administrative in nature. We disapprove of the opinion to the extent that it follows Forman's holding that the initiative power does not extend to matters legislatively delegated to local governments.
[73] Forman, 89 Nev. at 537, 516 P.2d at 1236.
[74] Glover, 118 Nev. at ___, 50 P.3d at 552-53.
[75] Hessey v. Burden, 615 A.2d 562, 572-74 (D.C. 1992) (reviewing various state cases regarding pre-election challenges to the validity of proposed initiatives); see James D. Gordon III & David B. Magleby, Pre-election Judicial Review of Initiatives and Referendums, 64 Notre Dame L.Rev. 298 (1989); see also Las Vegas Chamber of Commerce v. Del Papa, 106 Nev. 910, 802 P.2d 1280 (1990) (noting that this court had always strictly limited its pre-election intervention to cases involving violations of state constitutional or statutory rules governing the procedures for placing initiatives and referendums on the ballot, and declining to enjoin an initiative that, if enacted, could later be held unconstitutional). But see Stumpf v. Lau, 108 Nev. 826, 839 P.2d 120 (1992) (holding that this court may enjoin a ballot question that, if enacted, would constitute a plain and palpable violation of the United States Constitution and would be inoperative under any circumstances or conditions).
[76] When petitioners have no plain, speedy and adequate remedy in the ordinary course of law, a writ of mandamus is available to control an arbitrary or capricious exercise of discretion. NRS 34.170; Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 603-04, 637 P.2d 534, 536 (1981). Although petitioners could have appealed the district court's decision, and an appeal is ordinarily an adequate remedy, Guerin v. Guerin, 114 Nev. 127, 131, 953 P.2d 716, 719 (1998), severe time constraints rendered an appeal inadequate in this case. We deny Nevada Northwest and the County's motion to strike portions of the reply and reply appendix.
[1] 118 Nev. ___, 53 P.3d 387 (2002).
[2] 118 Nev. ___, 50 P.3d 546 (2002).