[No. A039002. First Dist., Div. One. June 15, 1988.]

CITY AND COUNTY OF SAN FRANCISCO et al., Plaintiffs and Respondents, v.
JAY PATTERSON, as Registrar of Voters, etc., Defendant and Respondent;
RICHARD GUICHARD, Real Party in Interest and Appellant.

COUNSEL

Arlo Hale Smith for Real Party in Interest and Appellant.

Louise H. Renne, City Attorney, Dennis Aftergut, Burk E. Delventhal and Randy Riddle, Deputy City Attorneys, for Plaintiffs and Respondents.

No appearance for Defendant and Respondent.

OPINION

**RACANELLI, P. J.**—This case concerns the validity of a preelection removal of an initiative ordinance from the San Francisco ballot.

### FACTS

We outline the procedural/factual background to the questions presented.

Appellant Robert Guichard was a proponent of a petition for an initiative ordinance to be submitted to the electorate at a special election scheduled for June 2, 1987. The ballot proposal, entitled "Stop the Great Land Give-

away Ordinance" (Proposition D), provided in essence that the City and County of San Francisco and the San Francisco Unified School District (collectively plaintiffs and respondents) could not lease any real property for a period longer than five years or sell any real property under their respective jurisdictions for less than 90 percent of the property's fair market value unless the electorate approved the transfer at a regularly scheduled municipal election.[1]

On April 3, 1987, respondent Jay Patterson, the registrar of voters, confirmed that the proposition contained the requisite number of valid signatures qualifying it for the ballot.

On April 10, 1987, respondents city and school district filed a petition for writ of mandate directing the registrar to remove the proposition from the ballot as being beyond the scope of the initiative power of the people.

On April 20, 1987, the trial court ordered the issuance of a peremptory writ mandating respondent Patterson to remove Proposition D from the ballot. In a written decision, the court determined that "the San Francisco electorate plainly lacks the authority to impose any such restrictions on the San Francisco Unified School District or, without amending the Charter, upon the governing body of the City and County of San Francisco." The court concluded that since the adoption of Proposition D would be a nullity, the measure should be removed from the ballot to avoid voter confusion as well as frustration of the initiative process.

Following entry of judgment, this appeal ensued.

---

[1] Section 2 of the proposed ordinance provided: "No officer, department, commission or agency of the City and County of San Francisco or the San Francisco Unified School District shall sell, convey, agree to sell or convey, lease or sublease or agree to lease or sublease, or give any option for lease or sublease or renewal of same for a total period of more than five years, or otherwise dispose or agree to dispose of any legal or equitable interest in real property held by the City and County of San Francisco or the San Francisco Unified School District (including aerial and mineral rights) where the interest covers an area of 500 square feet or more, except upon receipt of consideration equal to at least 90% of fair market value of such property interest, which consideration or adequate security therefore, shall be received in advance by the City and County of San Francisco or the San Francisco Unified School District."

Section 5 provided in relevant part: "For the purposes of this ordinance, to exempt a proposed transfer of real property interests from the provisions hereof, said exemption shall be approved by a majority vote of the San Francisco electors at a regularly scheduled municipal election, to be held after the effective date of this ordinance. Each exemption pursuant to this section shall be voted on by separate ordinance."

The measure included other provisions concerning state and federal preemption, public notice and review periods, judicial remedy for violations, and a severability clause.

## DISCUSSION

### I.

■ Appellant first contends the trial court erred in conducting a preelection review of the validity of the proposed ordinance because an initiative measure may be deleted only where complete invalidity is clear beyond all doubt. (See *Gayle* v. *Hamm* (1972) 25 Cal.App.3d 250, 258 [101 Cal.Rptr. 628].) He argues that preelection review is a disfavored remedy, pointing to 18 states which allegedly prohibit such form of challenge.

While acknowledging the importance of the legislative initiative process (see *Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 591 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038]) and the general rule favoring postelection review, the city attorney argues preelection review is proper where the challenged initiative measure is beyond the power of the people to adopt.

"Courts have repeatedly stressed it is more important to review challenges to initiative measures after an election rather than to disrupt the electoral process by preventing exercise of the people's right to vote. (*Brosnahan* v. *Eu* (1982) 31 Cal.3d 1, 4 [181 Cal.Rptr. 100, 641 P.2d 200].) An exception to this judicial restraint arises on a showing the proposed initiative is beyond the power of the voters to adopt or is not legislative in character. (*American Federation of Labor* v. *Eu* (1984) 36 Cal.3d 687, 696-697 [206 Cal.Rptr. 89, 686 P.2d 609].)" (*Wiltshire* v. *Superior Court* (1985) 172 Cal.App.3d 296, 302 [218 Cal.Rptr. 199].) The Supreme Court has also stated that postelection review was more appropriate "*in the absence of some clear showing of invalidity.*" (*Brosnahan* v. *Eu* (1982) 31 Cal.3d 1, 4 [181 Cal.Rptr. 100, 641 P.2d 200], italics added.) In his concurring and dissenting opinion, Justice Mosk explained, "courts have frequently declined to strike an initiative from the ballot despite a claim that its adoption would be a futile act because the measure offends the Constitution. (E.g., *Mulkey* v. *Reitman* (1966) 64 Cal.2d 529, 535 [50 Cal.Rptr. 881, 413 P.2d 825]; *Gayle* v. *Hamm* (1972) 25 Cal.App.3d 250, 256-258 [101 Cal.Rptr. 628].)

"But this rule applies only to the contention that an initiative is unconstitutional because of its substance. If it is determined that the electorate does not have the power to adopt the proposal in the first instance or that it fails to comply with the procedures required by law to qualify for the ballot, the measure must be excluded from the ballot.

"Thus, for example, election officials have been ordered not to place initiative and referendum proposals on the ballot on the ground that the

electorate did not have the power to enact them since they were not legislative in character (e.g., *Simpson* v. *Hite* (1950) 36 Cal.2d 125, 129-134 [222 P.2d 225]; *Fishman* v. *City of Palo Alto* (1978) 86 Cal.App.3d 506, 511-512 [150 Cal.Rptr. 326]; cf. *Farley* v. *Healey* (1967) 67 Cal.2d 325, 328-329 [62 Cal.Rptr. 26, 431 P.2d 650]), the subject matter was not a municipal affair (e.g., *Riedman* v. *Brison* (1933) 217 Cal. 383, 387 [18 P.2d 947]; *Mervynne* v. *Acker* (1961) 189 Cal.App.2d 558, 565-566 [11 Cal.Rptr. 340]), or the proposal amounted to a revision of the Constitution rather than an amendment thereto (*McFadden* v. *Jordan* (1948) 32 Cal.2d 330, 349-351 [196 P.2d 787])." (*Id.,* at p. 6.)

The standard described by Justice Mosk was expressly endorsed by the Supreme Court in its opinion (with one dissent) in *Legislature* v. *Deukmejian* (1983) 34 Cal.3d 658, 666-667 [194 Cal.Rptr. 781, 669 P.2d 17]. Nearly a year later, the court reasserted the propriety of preelection review of an initiative measure where, as here, the challenge is directed to the power of the electorate to adopt the proposed initiative. (See *American Federation of Labor* v. *Eu* (1984) 36 Cal.3d 687, 695-696 [206 Cal.Rptr. 89, 686 P.2d 609], and see fn. 9.) The court reasoned, in part, that: "The presence of an invalid measure on the ballot steals attention, time and money from the numerous valid propositions on the same ballot. It will confuse some voters and frustrate others, and an ultimate decision that the measure is invalid, coming after the voters have voted in favor of the measure, tends to denigrate the legitimate use of the initiative procedure." (*Id.,* at p. 697; see also *deBottari* v. *City Council* (1985) 171 Cal.App.3d 1204, 1210 [217 Cal.Rptr. 790].)

In view of the jurisdictionally grounded challenge by respondents below that the proposed measure exceeded the initiative power, preelection review was eminently appropriate.[2]

## II.

Appellant's major argument is that the proposed initiative is within the power of the San Francisco voters to adopt and should not have been ordered removed from the ballot. Respondents city and school district counter that the local electorate lacks the power to regulate the sale of property by either public entity.

### Respondent School District

 Under the relevant provisions of section 9.108 of the San Francisco City Charter, "The registered voters shall have power to propose by

---

[2] We decline to take judicial notice of the election results of two other propositions to which the proposed measure allegedly bears some relationship.

petition, and to adopt or reject at the polls, any ordinance, act or other measure which is within the power conferred upon the board of supervisors to enact . . . ." Accordingly, the initiative power of the people is no broader in scope than the power of the board of supervisors.

The city attorney correctly points out that the subject of public education is a matter of statewide concern and the school district is a duly established state agency. Thus, it is argued, even the board of supervisors has no power to regulate actions within the exclusive jurisdiction of the school district board; and, a fortiori, neither do the people through the power of initiative.

■ "[C]harter provisions, ordinances or regulations 'relating to matters which are purely "municipal affairs"' prevail over state laws covering the same subject. (*Baron* v. *City of Los Angeles* (1970) 2 Cal.3d 535, 539 [86 Cal.Rptr. 673, 469 P.2d 353, 42 A.L.R.3d 1036]; Cal. Const., art. XI, § 5, subd. (a).) [¶] 'As to matters which are of statewide concern, however, home rule charter cities remain subject to and controlled by applicable general state laws regardless of the provisions of their charters . . . .' (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 61 [81 Cal.Rptr. 465, 460 P.2d 137].)" (*Baggett* v. *Gates* (1982) 32 Cal.3d 128, 136 [185 Cal.Rptr. 232, 649 P.2d 874].)

■ "[A] school district is an involuntary political division of the state, created by or under the authority of general laws. [Citation.] A school district is an agency of the state [citations]; the school system is a matter of general state concern and is not a municipal affair. [Citations.]" (*Butler* v. *Compton Junior College Dist.* (1947) 77 Cal.App.2d 719, 728 [176 P.2d 417].) As our highest court early noted: "The public school system is of statewide supervision and concern and legislative enactments thereon control over attempted regulation by local government units. [Citations.]" (*Hall* v. *City of Taft* (1956) 47 Cal.2d 177, 181 [302 P.2d 574].) Further, "[t]he beneficial ownership of property of the public schools is in the state." (*Ibid.*)

The Education Code represents the Legislature's comprehensive enactment of laws regulating public schools and school districts on a statewide basis, and from which the power of the local school board derives. Indeed, the Education Code explicitly regulates the sale of real property by a school district. (Ed. Code, § 39360.)[3]

---

[3] Section 39360 provides: "The governing board of any school district may sell any real property belonging to the school district or may lease for a term not exceeding 99 years, any real property, together with any personal property located thereon, belonging to the school district which is not or will not be needed by the district for school classroom buildings at the

In rebuttal, appellant presents the anemic argument that cities are permitted to enact legislation which "benefits" schools and that, in any event, the initiative proposal contains a remedial severability clause.[4] The argument is nonsensical. It is abundantly clear that the proposed ordinance sought to be applied to respondent school district is preempted and also unmistakably beyond the power of the people to enact.

### Respondent City and County

■ Appellant further argues that the San Francisco voters have the power to enact the initiative as an ordinance regulating the sale of real property by the board of supervisors. He argues, in syllogism form: the voters are empowered to enact any ordinance that the board can enact (S.F. Charter, § 9.108); the board can enact legislation authorizing the sale of property; therefore, the voters can similarly authorize or restrict the sale of property.

■ ■■■ ■ The city responds that any restriction on the board's charter-based authority to sell or lease city property must be accomplished by charter amendment and not by initiative ordinance.[5] Therefore, the city contends, the entire initiative is beyond the power of the people to enact and was properly removed from the ballot.

The city's contention has merit.

It is well established that the charter of a municipality is its constitution. (Brown v. City of Berkeley (1976) 57 Cal.App.3d 223, 231 [129 Cal.Rptr. 1].) And the provisions of a city charter respecting purely municipal affairs prevail over related state laws. (Baggett v. Gates, supra, 32 Cal.3d at p. 136; Campen v. Greiner (1971) 15 Cal.App.3d 836, 840 [93 Cal.Rptr. 525].) Furthermore, "an ordinance can no more change or limit the effect of a charter than a statute can modify or supersede a provision of the state Constitution [citations]." (Lucchesi v. City of San Jose (1980) 104 Cal.App.3d 323, 328 [163 Cal.Rptr. 700].)

---

time of delivery of title or possession. The sale or lease may be made without first taking a vote of the electors of the district, and shall be made in the manner provided by this article."

[4] Section 4 of the initiative provides that the ordinance would not apply in circumstances where its application would violate state or federal law (discussed infra).

[5] The power of the electorate to amend a city charter is authorized by the California Constitution (art. XI, § 3) as implemented by statewide legislation exclusively regulating the processes and standards for qualifying a charter amendment for the ballot. These general laws supersede conflicting provisions in a city charter. (District Election etc. Committee v. O'Connor (1978) 78 Cal.App.3d 261, 267 [144 Cal.Rptr. 442].) San Francisco City Charter section 9.108 confers on the voters the power to adopt initiative ordinances with specific regulations and procedures also contained in the charter. (Cf., e.g., Gov. Code, § 34450 et seq. and S.F. Charter, § 9.111.)

Under the provisions of the San Francisco City Charter, all powers neither delegated to other officials, boards or commissions nor reserved to the people are vested in the board of supervisors. (§§ 1.101, 2.101.) Thus, any restrictions on the power of the board must be explicitly provided by the charter or accomplished by charter amendment.

Sections 7.401 and 7.402 of the charter specify the procedures and standards for the sale or exchange and lease of real property by the board.[6] The city is quick to explain that while at first glance it would appear that the charter (§ 7.401) proscribes the board's power to sell property for less than 90 percent of its appraised value—much as the proposed initiative ordinance provides—the charter restriction does not apply where the property is to be used for a public purpose as here shown. The Supreme Court has declared that a fundamental purpose of section 7.401 (formerly § 92) is to prevent waste of public assets through enrichment of private purchasers at a noncompetitive sale for less than fair value. (*Harman* v. *City and County of San Francisco* (1972) 7 Cal.3d 150, 164-165 [101 Cal.Rptr. 880, 496 P.2d 1248].) ■ Although the California Constitution directly prohibits gifts of public funds (Cal. Const., art. XVI, § 6), an exception for public purpose is well established. (See *California Housing Finance Agency* v. *Elliott* (1976) 17 Cal.3d 575, 583 [131 Cal.Rptr. 361, 551 P.2d 1193]; *County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730, 745 [97 Cal.Rptr. 385, 488 P.2d 953], app. dism. *sub nom. County of Alameda* v. *California Welfare Rights Organization* (1972) 406 U.S. 913 [32 L.Ed.2d 112, 92 S.Ct. 1762].) If an appropria-

---

[6]Section 7.401 provides, in pertinent part: "Any real property owned by the city and county, excepting lands for parks and squares, may be sold on the recommendation of the officer, board or commission in charge of the department responsible for the administration of such property. When the board of supervisors, by ordinance, may authorize such sale and determine that the public interest or necessity demands, or will not be inconvenienced by such sale, the director of property shall make a preliminary appraisal of the value of such property. The director of property shall advertise by publication the time and place of such proposed sale. He shall forthwith report to the department head concerned and to the supervisors the amount of any and all tenders received by him. The supervisors may authorize the acceptance of the highest and best tender, or they may, by ordinance, direct that such property be sold at public auction, date of which shall be fixed in the ordinance. No sale other than a sale at public auction shall be authorized by the supervisors unless the sum offered shall be at least ninety percent of the preliminary appraisal of such property herein before referred to."

Section 7.402 provides, as relevant: "(a) When the head of any department in charge of real property shall report to the board of supervisors that certain land is not required for the purposes of the department, the board of supervisors, by ordinance, may authorize the lease of such property. The director of property shall arrange for such lease for such period as prescribed pursuant to subparagraph (c) of this section to the highest responsible bidder at the highest monthly rent. The director of property shall collect rents due under such lease.

" . . . . . . . . . . . . . . . . . . .

"(c) The board of supervisors shall have the power, by ordinance, subject to the referendum provisions of this charter, to provide a longer term for leases executed under this section than that provided for herein providing, however, that until such ordinance shall become effective the limitations contained in this section as to the term of the lease shall control."

tion of public funds or property is for a public purpose (primarily a matter of legislative discretion), it is not considered an unlawful gift. (*California Housing Finance Agency* v. *Elliott, supra,* 17 Cal.3d at p. 583.) ▮▮▮ Accordingly, the proscriptions imposed under charter provisions such as section 7.401 do not apply if the transfer of public property is for a valid public purpose. (See *City of Los Angeles* v. *Superior Court* (1959) 51 Cal.2d 423, 433-434 [333 P.2d 745]; *Kizziah* v. *Department of Transportation* (1981) 121 Cal.App.3d 11, 22 [175 Cal.Rptr. 112].) And the board of supervisors retains the power to sell property for less than 90 percent of its appraised value if a part of the consideration received serves a public purpose.

The initiative ordinance as drafted sought to change this discretionary power of the board granted by the charter. Such attempt to *amend* the charter by the proposed initiative measure is patently invalid.

Appellant further argues that charter sections 9.108 and 9.114[7] empower the voters to divest the board of supervisors of this discretionary power. We disagree.

As previously discussed, section 9.108 defines the scope of the initiative power of the electorate congruent with that conferred upon the board of supervisors. As a corollary, the electorate has no greater power to legislate than the board itself possesses. Thus, neither the board nor the electorate would be empowered to modify the sale conditions by ordinance. Such a proposed change in section 7.401 can only be accomplished through a charter amendment. And while the proposed ordinance parallels the charter's 90 percent limitation, it attempts to alter the board's power in terms of new procedures and presumably prohibits a legitimate public purpose as valid consideration.

Nor does related section 9.114 expand the scope of the initiative power. The companion section simply limits the power of the board to amend or repeal an initiative ordinance that the voters are authorized to enact pursuant to section 9.108. And then only to that extent could it be arguably considered an extension of the power expressly reserved in the people.[8]

---

[7] Section 9.114 provides in pertinent part: "No initiative, ordinance or measure or declaration of policy approved by the electorate under the provision of this charter shall be subject to veto, or amended or repealed except by vote of the electorate, unless such ordinance or measure shall otherwise provide."

[8] We think appellant misinterprets the city's argument on this point. As we understand it, the city merely asserts that section 9.114 does not reserve or create any *new* power in the people.

City also argues the people cannot employ the initiative process to bind future boards which the board itself could not do. The point seems well taken. "It is a familiar principle of law that no legislative board, by normal legislative enactment, may divest itself or future boards of the power to enact legislation within its competence. (See, e.g., *Thompson* v. *Board of Trustees* (1904) 144 Cal. 281, 283 [77 P. 951]; *McNeil* v. *City of South Pasadena* (1913) 166 Cal. 153, 155-156 [135 P. 32]; *In re Collie* (1952) 38 Cal.2d 396, 398 [240 P.2d 275].)" (*City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898, 929 [120 Cal.Rptr. 707, 534 P.2d 403]; *Campen* v. *Greiner, supra,* 15 Cal.App.3d at p. 843; see also *People's Advocate, Inc.* v. *Superior Court* (1986) 181 Cal.App.3d 316, 329 [226 Cal.Rptr. 640].)

The charter grants the board of supervisors the power to sell (or lease) real property under specific terms and conditions pertaining to such transactions. Neither the electorate nor the board can attempt to legislatively alter these provisions so as to bind a future board *except* by an appropriate charter amendment. In point of fact, the proposed initiative is an indirect attempt to accomplish what can only be done directly by amendment of the charter.[9]

## *Severability*

 Finally, city argues that if one of the interrelated parts of a ballot proposition is invalid, the entire proposition should be removed so as not to confuse the voters.

Relying on cases involving postelection review (*In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744]) and single-subject requirements (*Fair Political Practices Com.* v. *Superior Court* (1979) 25 Cal.3d 33 [157 Cal.Rptr. 855, 599 P.2d 46], cert. den. (1980) 444 U.S. 1049 [62 L.Ed.2d 736, 100 S.Ct. 740]), appellant responds that the severability clause saves the proposition.

A similar claim was raised and summarily rejected in *City of Atascadero* v. *Daly* (1982) 135 Cal.App.3d 466, 470 [185 Cal.Rptr. 228]: "Appellants

---

[9]*Kugler* v. *Yocum* (1968) 69 Cal.2d 371 [71 Cal.Rptr. 687, 445 P.2d 303], cited by appellant in his closing brief, is inapposite. In *Kugler,* the issue analyzed was whether an initiative ordinance providing for parity of firefighters' salaries constituted an improper delegation of legislative power. In concluding that the ordinance was valid, the court determined that implementation of the established legislative policy did not constitute an improper delegation of legislative policy (*id.,* at p. 377) and that salary decisions remained within the exclusive power of the city council (*id.,* at pp. 377-378, fn. 3).

advanced the argument that the presence of the severability clause in the proposed initiative ordinance might save it. Such is not the law. (*Bennett* v. *Drullard* (1915) 27 Cal.App. 180, 185-187 [149 P. 368] [city council refused to submit three-part ordinance to a vote, held: any part void, all void if parts interrelated]; accord *Alexander* v. *Mitchell* (1953) 119 Cal.App.2d 816, 829-830 [260 P.2d 261]; see *Santa Barbara Sch. Dist.* v. *Superior Court* (1975) 13 Cal.3d 315, 332, fn. 7 [118 Cal.Rptr. 637, 530 P.2d 605].)"

As the Supreme Court explained in *American Federation of Labor* v. *Eu, supra,* 36 Cal.3d 687, 716, fn. 27: "Our decision in *Santa Barbara Sch. Dist.* v. *Superior Court, supra,* 13 Cal.3d 315, rejected the argument that a different test of severability applies to initiative measures than to ordinary statutes passed by the Legislature. (See p. 332, fn. 7.) That case, however, involved postelection review of an initiative, and used language which left open the test of severability in preelection review. (See *ibid.*) On this matter, we think the timing does make a difference. After the election, no harm ensues if the court upholds a mechanically severable provision of an initiative, even if most of the provisions of the act are invalid. In a preelection opinion, however, it would constitute a deception on the voters for a court to permit a measure to remain on the ballot knowing that most of its provisions, including those provisions which are most likely to excite the interest and attention of the voters, are invalid." (See also *California Trial Lawyers Assn.* v. *Eu* (1988) 200 Cal.App.3d 351 [245 Cal.Rptr. 916] [limited use of severance in initiatives].)

We conclude that the existence of the severability clause (§ 4) is of no legal effect.[10]

In view of our determination, appellant's request for attorney fees is dismissed as moot.[11]

Judgment affirmed.

---

[10] We reject appellant's related argument that the language of section 4 of the initiative (providing that the ordinance is inapplicable "in circumstances where its application would violate state or federal law . . .") salvages the tainted measure. Since the proposed ordinance is beyond the power of the people to enact, the section is a nullity and, in any event, cannot save the totally invalid ordinance.

[11] We express our concern and caution to counsel over the failure to comply with the rules of court. The opening brief had no table of contents, and neither the opening nor reply brief contained the required table of cases. (Cal. Rules of Court, rule 15(a).)

Newsom, J., and Holmdahl, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 1, 1988.