[No. D042801. Fourth Dist., Div. One. July 1, 2004.]

HOWARD JARVIS TAXPAYERS ASSN. et al., Plaintiffs, Cross-defendants and Respondents, v.
CITY OF SAN DIEGO, Defendant, Cross-complainant and Appellant.

COUNSEL

Casey Gwinn, City Attorney, and Leslie J. Girard, Assistant City Attorney, for Defendant, Cross-Complainant and Appellant.

Howard Jarvis Taxpayers Association, Trevor A. Grimm, Jonathan M. Coupal and Timothy A. Bittle for Plaintiff, Cross-Defendant and Respondent Howard Jarvis Taxpayers Association.

J. Bruce Henderson for Plaintiff, Cross Defendant and Respondent Edward Teyssier.

OPINION

**NARES, Acting P. J.**—In this appeal, defendant and cross-complainant City of San Diego (the city) challenges a judgment that (1) upheld Proposition E, a ballot initiative that the voters in the city approved in the March 2002 general municipal election (the election) by a majority vote; and (2) invalidated as unconstitutional a key provision (discussed, *post*) of a second ballot measure, Proposition F, that the voters also approved by a slimmer majority vote margin in the same election.

Proposition E (titled "The San Diego Taxpayer Protection Act of 2000 Proposition 218") which plaintiffs and cross-defendants Howard Jarvis Taxpayers Association (HJTA) and Edward Teyssier supported and the city opposed, amended the Charter of the City of San Diego (the charter) to require voter approval by a two-thirds supermajority margin of any new general tax,[1] or any increase in an existing general tax, to be levied by the San Diego City Council (the city council).

Proposition F, which the city placed on the same ballot in response to Proposition E, would amend the charter by adding section 226 to article XIV, which would have required—retroactively to the date of the election—that any amendment of the charter requiring a "super majority"[2] vote of the electorate (such as Proposition E) would itself have to be adopted by the same proportionate supermajority vote.

The city council declared that the voters approved Proposition F. The city council also declared that Proposition E failed because it did not receive a two-thirds vote as required by Proposition F.

HJTA and Teyssier challenged the city's certification of Proposition F in consolidated declaratory relief actions seeking a determination that Proposition E was duly adopted and Proposition F was unconstitutional. In response, the city brought consolidated declaratory relief cross-actions seeking a determination that if Proposition F was invalid, Proposition E was also invalid.

HJTA brought a motion for summary adjudication on its complaint, and HJTA and the city brought cross-motions for summary judgment on the city's cross-complaints. The court ruled in favor of HJTA on both of its motions and entered judgment in favor of HJTA and Teyssier, upholding Proposition E and invalidating key provisions of Proposition F.[3]

---

[1] The city attorney's analysis of Proposition E, as set forth in the County of San Diego's sample ballot and voter information pamphlet, defined the term "general tax" as "a tax that is utilized for general governmental purposes, unlike a special tax, which is a tax earmarked for a specific purpose." The city attorney also explained that Proposition 218, which the voters approved in 1996, "requires that all new local taxes be submitted to the voters before they become effective. Approval by a majority of the City's voters is currently required before the City Council can levy a new general tax, or increase an existing general tax. . . . Proposition 218 requires a two-thirds vote to approve a new or increased special tax, such as a school bond measure or a sales tax earmarked for transportation projects."

[2] The city attorney's analysis of Proposition F, also set forth in the County of San Diego's sample ballot and voter information pamphlet, defined the term "supermajority vote requirement" as "one which requires approval of a measure by more than a simple majority of the voters."

[3] As we shall explain, the court found that the offending provisions of Proposition F could be severed through reformation and the remaining provisions could remain in effect.

On appeal, the city contends the judgment should be reversed because (1) the California Constitution and applicable state statutes permit the charter to be amended to require that certain charter amendments be approved by a supermajority vote of the electorate; (2) Propositions E and F did not conflict; (3) Proposition F may be retroactively applied to Proposition E so as to invalidate Proposition E on the ground it did not receive a supermajority vote in the election; (4) Proposition E violates article XI, section 3, subdivision (a) (hereafter article XI, section 3(a))[4] of the California Constitution because it would require a two-thirds vote to impose or increase a general tax by means of an amendment to the charter; and (5) Proposition E also violates article XIII C, section 2, subdivision (b) (hereafter article XIII C, section 2(b)) because it would require a two-thirds vote to impose or increase a general tax.

We hold that the provisions of Proposition F requiring a supermajority vote of the electorate for approval of certain amendments to the charter are invalid, and thus the court properly ordered them severed because those provisions (1) conflict with article XI, section 3(a), which provides that only a majority vote is required to amend a city charter in California; and (2) are preempted by state law. We also hold that Proposition E is invalid and not reformable because its provisions requiring a supermajority two-thirds vote for approval of any new general tax or any increase in an existing general tax conflict with articles XIII C, section 2(b) and XI, section 3(a). Accordingly, we affirm the portion of the judgment in favor of HJTA and Teyssier on their complaints challenging Proposition F and reverse the portion of the judgment in their favor on the city's cross-complaints challenging Proposition E.

## FACTUAL AND PROCEDURAL BACKGROUND[5]

### A. *Propositions E and F*

At the General Municipal Election held on March 5, 2002, two ballot measures proposing to amend the charter—Propositions E and F—were presented to the city's electorate. Proposition E, which had been placed on the ballot pursuant to certified petitions presented to the city council, purported to require a two-thirds vote for the imposition of any new general tax,[6] or for any increase in any existing general tax, to be levied by the city

---

[4] All further article references are to the California Constitution.

[5] In its respondent's brief, HJTA states that it joins in the statement of facts and the statement of the case recited in the city's opening brief. Because Teyssier's brief recital of the background of this case is consistent with that provided by the city, we take the following factual and procedural background mainly from the city's opening brief.

[6] See footnote 1, *ante.*

council.[7] Proposition F, which the city council placed on the ballot, purported to retroactively require from the date of the election that any measure requiring a supermajority vote (such as Proposition E) must itself be adopted by an identical supermajority vote to be effective.[8]

Both propositions received a majority vote of the electorate: Proposition E received 54.4 percent of the vote and Proposition F received 50.3 percent. Proposition E received more votes (88,616) than did Proposition F (79,678). The results of the election were certified to the city council by the city clerk, and the city council declared that Proposition F had been adopted, but that Proposition E had been rejected by the voters because it did not receive a two-thirds vote as required by Proposition F. Proposition F was filed by California's Secretary of State and became effective as section 226 of article XIV of the charter.

## B. *Pleadings*

In April 2002, HJTA brought an action for declaratory relief against the city, seeking a declaration that Proposition F was invalid on a variety of grounds. Teyssier thereafter brought a similar action.[9] The city answered HJTA's complaint, raising the affirmative defenses of failure to state a cause of action and lack of standing, and filed a cross-complaint for declaratory relief alleging that, if Proposition F was invalid, Proposition E was also invalid because it violated articles XI and XIII C. The city also answered Teyssier's complaint, raising the same affirmative defenses asserted by HJTA, and filed a similar declaratory relief cross-complaint. The court ordered the

---

[7] Proposition E proposed to add section 76.2 (General Taxes) to the charter. That section provides: "Notwithstanding any provision of the Charter to the contrary, any increase in an existing general tax or imposition of any new general tax may be levied by the Council only if the proposed levy has been approved by a two-thirds vote of the qualified electors of the City voting on the proposition. As used in this section, a 'general tax' is a tax levied for the general fund to be utilized for general governmental purposes."

[8] Proposition F proposed to add section 226 (Supermajority Vote Requirements) to the charter. That section provided: "a) Notwithstanding any other provision of this Charter, any amendment of this Charter, ballot proposal, initiative, statute, law or regulation of any type, whether proposed to be adopted by the electorate, the City Council, or any other body acting pursuant to this Charter or the Municipal Code, that requires a vote of the electorate in excess of a simple majority for any matter, must itself be approved by a vote of the electorate in the same proportion as proposed, in order to be adopted, valid or otherwise effective. [¶] b) This section may be adopted by a simple majority vote, and shall be applicable to any amendment of this Charter, ballot proposal, initiative, statute, law or regulation of any type, as set forth in Subsection A, proposed to be adopted at the municipal election by which this Charter Section 226 is approved by the electorate, or otherwise adopted on or after the date of that municipal election, and shall not be applicable to any matter adopted or approved prior to the date of such municipal election."

[9] Teyssier's complaint also named as defendants the city's mayor, council, and clerk.

consolidation of the city's cross-actions for all purposes. HJTA and Teyssier answered the city's cross-complaints.

### C. HJTA's Motion for Summary Adjudication on Its Complaint

HJTA filed a motion for summary adjudication on its complaint, contending that (1) Proposition F was preempted by the state Constitution; (2) Propositions E and F were irreconcilably in conflict, and Proposition E was thus effective because it received more votes; and (3) Proposition F could not retroactively nullify the vote on a proposition (Proposition E) that appeared on the same ballot. The City opposed HJTA's motion on the grounds that (1) HJTA had no standing to contest the validity of Proposition F; (2) the state Constitution did not prohibit a charter city from imposing supermajority vote requirements as set forth in Proposition F, and the imposition of such a requirement is a municipal affair reserved to charter cities under the Constitution and is not preempted by statutory law; (3) Propositions E and F did not conflict; (4) the electorate intended that Proposition F be applied retroactively to the date of the election so as to require a supermajority vote for the approval of Proposition E; and (5) if the court determined that Proposition F could not require a supermajority vote requirement to amend the charter, any offending clauses could be severed so as to save the balance of that proposition. Teyssier did not participate in the summary adjudication proceedings.

### D. Order Granting HJTA's Motion for Summary Adjudication

In August 2002, the court issued a telephonic ruling granting HJTA's summary adjudication motion. Following oral argument, the court issued a minute order confirming the telephonic ruling, and thereafter entered a formal order, but did not enter a judgment pending resolution of the cross-complaints.

In the order granting HJTA's motion, the court found that HJTA had standing to bring the action; Proposition F was preempted by the state Constitution; and Proposition F could not be applied retroactively. The court also found, however, that the offending parts of Proposition F could be

severed from its other provisions, which could remain in effect.[10] With respect to the preemption issue, the order stated: "A city charter may not conflict with the California Constitution. . . . [A]rticle XI, section 3 states that a county or city may adopt a charter by majority vote of its electors. A charter may be amended, revised or repealed in the same manner. Adoption of [Proposition] F would no longer permit the City Charter to be amended by majority vote. Rather, a supermajority of the City voters would be required to amend the Charter on certain tax matters. Adoption of [Proposition] E means that a supermajority vote of two-thirds is required for the imposition of new general taxes. However, it does not alter the fact that the Charter may be amended by majority vote. [¶] Even if [Proposition] F were not in conflict with the California Constitution, it conflicts with the state statutory scheme for charter amendments because the Legislature impliedly manifested its intent to 'fully occupy' the area. . . . Furthermore, [Proposition] F cannot enter the field of charter amendments, even if it addresses a point on which the state statutes appear silent. [Citation.]"

### E. Cross-Motions for Summary Judgment on the City's Cross-Complaints

The city and HJTA thereafter filed cross-motions for summary judgment on the city's cross-complaints. Teyssier joined HJTA's motion. The city claimed that Proposition E was invalid because it conflicted with both article XI, section 3, and article XIII C. HJTA disputed this contention.

---

[10] Using strikethroughs to indicate the portions of Proposition F to be severed, the order stated in part: "The retroactivity clause in [Proposition] F and any suggestion that its supermajority vote requirement applies to charter amendments or initiatives proposing charter amendments is severed and deleted . . . . The remainder of the measure remains valid, as follows: [¶] 'Section 226. supermajority Vote Requirements.' [¶] (a) Notwithstanding any other provision of this Charter, any ~~amendment of this Charter,~~ ballot proposal, initiative, statute, law or regulation of any type, *except amendments of this* Charterwhether proposed to be adopted by the electorate, the City Council, or any other body acting pursuant to this Charter or the Municipal Code, that requires a vote of the electorate in excess of a simple majority for any matter, must itself be approved by a vote of the electorate in the same proportion as proposed, in order to be adopted, valid or otherwise effective. [¶] (b) This section may be adopted by a simple majority vote, ~~and shall be applicable to any amendment of this Charter, ballot proposal, initiative, statute, law or regulation of any type, as set forth in Subsection A, proposed to be adopted at the municipal election by which this Charter Section 226 is approved by the electorate, or otherwise adopted on or after the date of that municipal election, and shall not be applicable to any matter adopted or approved prior to the date of such municipal election.~~"

### F. *Order on the Cross-Motions for Summary Judgment*

The court issued a telephonic ruling denying the city's motion and granting HJTA's motion on the ground that Proposition E did not conflict with the state Constitution, and thus was valid as a matter of law. Following oral argument, the court took the matter under submission and thereafter requested further briefing on two issues raised by HJTA during the oral argument: (1) whether reformation of Proposition E was appropriate, and (2) whether a facial challenge to Proposition E was timely. In its supplemental brief, the city brought to the court's attention a recent California appellate decision, *Howard Jarvis Taxpayers Assn. v. City of Roseville* (2003) 106 Cal.App.4th 1178 [132 Cal.Rptr.2d 1] (*Roseville*), contending that it was relevant to the motion. HJTA, Teyssier and the city filed supplemental briefs.

In April 2003, the court issued a minute order confirming its previous telephonic ruling, finding that the city was making an untimely facial challenge to Proposition E (thereby declining to rule on the merits of the article XI, § 3 claim); Proposition E could be reformed in any event; and *Roseville, supra,* 106 Cal.App.4th 1178, was not relevant.

### G. *Judgment, Writ and Appeal*

In July 2003, the court filed a formal order on the cross-motions for summary judgment and entered judgment against the city and in favor of HJTA and Teyssier, disposing of the entire matter. In the judgment, the court ordered the severance and deletion of "[t]he retroactivity clause in [Proposition] F and any suggestion that its supermajority vote requirement applies to charter amendments or initiatives proposing charter amendments." The court also issued a writ of mandate commanding the city to take all necessary steps to cause certification of Proposition E as a valid charter amendment. The city's appeal from the judgment followed.

### STANDARD OF REVIEW

■ The court entered the judgment in favor of HJTA and Teyssier after granting both HJTA's motion for summary adjudication on HJTA and Teyssier's complaints challenging Proposition F and HJTA's motion for summary judgment on the city's cross-complaints challenging Proposition E. "A party may move for summary adjudication on grounds that one or more causes of action has no merit or there is no affirmative defense thereto." (*Travelers Casualty & Surety Co. v. Superior Court* (1998) 63 Cal.App.4th 1440, 1452 [75 Cal.Rptr.2d 54] (*Travelers*); Code Civ. Proc., § 437c, subd. (f)(1).) The motion may be granted only if it disposes entirely of a cause of action. (Code Civ. Proc., § 437c, subd. (f)(1).) A motion for

summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)

■ "Since a motion for summary judgment or summary adjudication 'involves pure matters of law,' we review a ruling on the motion de novo to determine whether the moving and opposing papers show a triable issue of material fact. [Citations. ]" (*Travelers, supra,* 63 Cal.App.4th at p. 1450.) In performing our de novo review, we view the evidence in a light favorable to the losing party, liberally construing his evidentiary submission while strictly scrutinizing the prevailing party's own showing, and resolving any evidentiary doubts or ambiguities in favor of the losing party. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143].)

## DISCUSSION

## I. *PROPOSITION F*

The city first contends the judgment in favor of HJTA and Teyssier on their declaratory relief complaints challenging Proposition F should be reversed because (1) neither the California Constitution nor any state statute regulating the charter adoption and amendment process in California prohibits the amendment of the charter to require that certain charter amendments be approved by a supermajority vote of the electorate; (2) Propositions E and F did not irreconcilably conflict; and (3) Proposition F may be retroactively applied to Proposition E so as to invalidate Proposition E on the ground it did not receive a supermajority vote in the election.

### A. *Proposition F Conflicts with Article XI, Section 3*

In granting HJTA's motion for summary adjudication, the court noted that "[a] city charter may not conflict with the California Constitution"[11] and found that the supermajority vote requirement proposed by Proposition F for certain charter amendments was in conflict with article XI, section 3 (discussed, *post*). The court did not err.

---

[11] In its opening brief, the city concedes that "[i]f a conflict exists as to the state constitution, [a charter city's] power may not be exercised."

■ Article XI, section 5, subdivision (a)[12] confers on charter cities "home rule" powers and autonomy in "municipal affairs." (*Fisher v. County of Alameda* (1993) 20 Cal.App.4th 120, 125 [24 Cal.Rptr.2d 384].) Witkin explains that "[u]nder this theory of 'municipal home rule,' such municipalities have supreme authority in the field of 'municipal affairs,' i.e., matters of internal or local concern, free from interference by the Legislature. [Citations.] [¶] The municipal affairs doctrine merely allows an area in which the local government may freely operate, *subject to basic constitutional limitations*." (8 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 799, pp. 327–328.)

■ It is well established that a charter represents the supreme law of a charter city, "subject only to conflicting provisions in the federal and state Constitutions and to preemptive state law. [Citation.]" (*Domar Electric, Inc. v. City of Los Angeles* (1994) 9 Cal.4th 161, 170 [36 Cal.Rptr.2d 521, 885 P.2d 934] (*Domar*); see also *Roseville, supra,* 106 Cal.App.4th at p. 1186.

Applying the foregoing legal principles, we conclude the provisions of Proposition F requiring that certain amendments to the charter be approved by a supermajority vote of the city's electorate conflict with the California Constitution. Article XI, section 3(a), which governs the voting margin required to amend a city charter, provides in part: "For its own government, a . . . city *may* adopt a charter by *majority vote* of its electors voting on the question. . . . A charter *may be amended . . . in the same manner.*" (Italics added.)

The city claims there is no conflict between article XI, section 3(a) and the supermajority voting requirement for charter amendments proposed by Proposition F. In support of this claim, the city maintains that the word "may" in the phrases "*may* adopt a charter by majority vote" (italics added) and "[a] charter *may* be amended . . . in the same manner" (italics added) set forth in article XI, section 3(a), *permits* a charter city to amend its charter by majority vote of the electorate, but does not create a restraint that *prohibits* such a city from requiring that charter amendments be approved by a supermajority (two-thirds) vote. We reject these assertions.

---

[12] Section 5, subdivision (a) of article XI provides: "It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to *municipal affairs*, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws. City charters adopted pursuant to this Constitution shall supersede any existing charter, and with respect to *municipal affairs* shall supersede all laws inconsistent therewith." (Italics added.)

As HJTA points out, the word "may" is also used in the state Constitution to indicate the existence of a right, but not an obligation. For example, article I, section 2, subdivision (a) provides in part that "[e]very person *may* freely speak, write and publish his or her sentiments on all subjects." (Italics added.) This provision plainly means that people have a right to share their thoughts, but have no obligation to do so. Article II, section 2, provides that "[a] United States citizen 18 years of age and resident in this State *may* vote." (Italics added.) This provision plainly means that people who are qualified to vote in California have a right, but not an obligation, to do so.

 Similarly, the provisions in article XI, section 3(a) that a city "*may* adopt a charter by majority vote" (italics added) and "[a] charter *may* be amended . . . in the same manner" (italics added) must be construed to mean that the electorate of a city has the right, but not the obligation, to adopt or amend a charter, but if the electorate exercises that right, only a majority vote, not a supermajority vote, is required for approval of such charter adoption or amendment. If we were to agree with the city's position that article XI, section 3(a) reserves to charter cities the permissive right to amend their charters to require a supermajority vote for certain charter amendments, and thus if we were to allow Proposition F to take effect, San Diego voters would no longer be permitted to approve all proposed amendments of the charter by majority vote even though article XI, section 3(a) expressly provides that they may do so. The foregoing provisions of Proposition F requiring a supermajority vote for approval of certain charter amendments cannot be harmonized with the provisions of article XI, section 3(a) granting voters the right to amend a city charter by majority vote. Because those provisions of Proposition F are in conflict with those of article XI, section 3(a), they cannot be enforced.

California decisional authority supports the foregoing interpretation of article XI, section 3(a). In *Roseville*, a decision on which the city relies, the Court of Appeal held that under article XI, section 3(a), "[a] city charter may be *amended*, revised or repealed *only by majority vote* of the electorate." (*Roseville, supra,* 106 Cal.App.4th at p. 1186, italics added.)

## B. *Preemption*

As a separate ground for granting HJTA's motion for summary adjudication, the court found that after the state Constitution was amended in 1970 the Legislature manifested an intent to fully occupy the field of charter amendments by enacting a comprehensive statutory scheme governing the charter amendment process, and thus state law preempted the provisions of Proposition F that would require a supermajority vote for approval of certain charter amendments. The city contends the court erred by ruling that those provisions of Proposition F were preempted by state law. We reject this contention.

## C. *HJTA's Request for Judicial Notice*

HJTA's motion for judicial notice of the official ballot pamphlet for statewide Proposition 2, which the voters approved at the June 1970 primary election, is granted. The ballot pamphlet is relevant to the 1970 revisions of the state Constitution (discussed, *post*).

## D. *Analysis*

Although a charter represents the supreme law of a charter city, it is subject to preemptive state law. (*Domar, supra,* 9 Cal.4th at p. 170; *Roseville, supra,* 106 Cal.App.4th at p. 1186.)

Here, state law preempts the provisions of Proposition F requiring a supermajority vote for approval of certain charter amendments. In *District Election etc. Committee v. O'Connor* (1978) 78 Cal.App.3d 261 [144 Cal.Rptr. 442] (*O'Connor*), the Court of Appeal addressed the issue of whether the regulation of the charter amendment process was a matter of statewide concern governed exclusively by state laws that supersede conflicting provisions in a municipal charter. (*Id.* at pp. 266–267.) The *O'Connor* court noted that prior to the revision of the state Constitution in 1970, "the constitutionally prescribed procedure for amending a city charter was exclusive and controlling over any conflicting provisions in a subordinate city charter." (*O'Connor, supra,* 78 Cal.App.3d at p. 268.) The court explained that in 1970 "the relevant constitutional provisions were extensively modified as part of an overall revision and streamlining effort. [Citation.]" (*Id.* at p. 270.) "According to the official report of the revision commission the adopted revisions (art. XI, § 3, subds. (a) [discussed, *ante*] and (b)) were designed to achieve, inter alia, the removal of cumbersome detailed provisions (including certain arbitrary limitations) in the charter enactment and revision process that could be better treated by statute, and to establish uniformity in such process between chartered cities and chartered counties [citation] . . . . [Citation.] But *such revisions neither contemplated nor effected any substantive change in the balance of powers between the local and state branches of government; indeed, the electorate clearly expressed its will that the relevant provisions are to be construed as restatements of such former constitutional principles without any substantive change.* [Citation.]" (*O'Connor, supra,* 78 Cal.App.3d at pp. 270–271, italics added, fn. omitted.)

On the issue of preemption, the *O'Connor* court first noted that "[i]n initiating the 1970 constitutional revisions with the avowed objectives of deleting extraneous detail and simultaneously authorizing statutory enactments to implement the charter amendment process authorized under revised article XI, section 3, subdivisions (a) and (b) [citation], the Legislature

manifested its intent to retain exclusive regulation of the charter amendment process, theretofore constitutionally mandated as a matter of statewide concern, through the statutes enacted for that sole purpose. . . . While chartered cities with 'home rule' provisions continue to maintain exclusive control over municipal affairs [citation], ' "As to matters which are of statewide concern, however, home rule charter cities remain subject to and controlled by applicable general state laws regardless of the provisions of their charters, if it is the intent and purpose of such general laws to occupy the field to the exclusion of municipal regulation (the preemption doctrine). . . ." ' [Citation.]" (*O'Connor, supra,* 78 Cal.App.3d at p. 272.)

The *O'Connor* court further noted that in enacting a comprehensive legislative scheme dealing with procedures applicable to amendments of charters adopted under article XI, section 3 and enumerated provisions codified in the Government Code, the Legislature "unequivocally expressed its intention that *the relevant Government Code sections were to apply uniformly to all chartered cities on a footing consistent with the authority provided under article XI, section 3*." (*O'Connor, supra,* 78 Cal.App.3d at pp. 273–274, italics added.)

The *O'Connor* court held that "in enacting general laws dealing with charter amendment procedures (Gov. Code, § 34450 et seq.), the Legislature was properly acting upon a matter of statewide concern with the intention of *preempting* that field of regulation to the exclusion of any attempted municipal regulation in the same field." (*O'Connor, supra,* 78 Cal.App.3d at p. 274, italics added.) Citing *O'Connor* with approval, the California Supreme Court stated in *People ex rel. Seal Beach Police Officers Assn. v. City of Seal Beach* (1984) 36 Cal.3d 591, 598–599 [205 Cal.Rptr. 794], that *O'Connor* "squarely held that 'the regulation of the charter amendment process is a matter of statewide concern governed exclusively by general laws which supersede conflicting provisions in a city and county charter.' "

Here, citing *O'Connor, supra,* 78 Cal.App.3d at page 272, and *City and County of San Francisco v. Patterson* (1988) 202 Cal.App.3d 95, 102 [248 Cal.Rptr. 290] (*Patterson*), the city asserts that "[t]he courts have held that the current charter amendment process is . . . of statewide concern regulated by state statutes (*not the constitution*), and *conflicting* charter provisions must give way to procedures governed by state statute." (First italics added.) The city also asserts that "the measure of the law is *not the state constitution* but rather state statutes" (italics added), and there is no conflict between Proposition F and state statutes because none of the statutes in the Government Code and the Election Code sets forth a voting percentage requirement for charter amendments. Thus, the city maintains, Proposition F is not preempted by state law.

■ We reject these assertions. As already discussed, the body of state law that governs the charter amendment process in California includes both statutory law and constitutional law, including article XI, section 3 (discussed, *ante*). (*O'Connor, supra,* 78 Cal.App.3d at pp. 273–274.) The city's reliance on *Patterson, supra,* 202 Cal.App.3d 95, is unavailing. In that case, the Court of Appeal stated that "[t]he power of the electorate to amend a city charter is authorized by the California Constitution (art. XI, § 3) as implemented by statewide legislation exclusively regulating the processes and standards for qualifying a charter amendment for the ballot. *These general laws* supersede conflicting provisions in a city charter." (*Patterson, supra,* 202 Cal.App.3d at p. 102, fn. 5, italics added.) The *Patterson* court's reference to "[t]hese general laws" is a reference to both article XI, section 3, and implementing statutes. The lack of a statute setting forth a voting requirement for charter amendments is explained by the fact that the voting requirement is already set forth in article XI, section 3(a). We thus conclude that the provisions of Proposition F requiring a supermajority vote for certain charter amendments are preempted by state law.

### E. *Other Issues*

We further conclude that the issue of whether the foregoing provisions of Proposition F retroactively apply to Proposition E is moot. For reasons already discussed, we have concluded those provisions are unenforceable because they conflict with the provisions of article XI, section 3(a), and they are preempted by state law. Because Proposition F cannot be enforced to the extent it purports to require a two-thirds vote for certain charter amendments, the issue of whether it can be retroactively applied to Proposition E as of the date of the election is moot. Because we shall conclude that Proposition E is unenforceable, we need not and do not address the issue of whether Propositions E and F were in conflict.

## II. *PROPOSITION E*

The city also argues that the judgment in favor of HJTA and Teyssier on the city's cross-complaints challenging Proposition E should be reversed because Proposition E (1) violates article XIII C, section 2(b) by requiring a two-thirds vote to approve a new general tax or an increase in an existing general tax; and (2) violates article XI, section 3(a) by requiring a two-thirds vote to approve an amendment to the charter that would provide for the imposition of a general tax or an increase in an existing general tax. For reasons we shall explain, we conclude that Proposition E conflicts with both article XIII C, section 2(b), and article XI, section 3(a). Accordingly, we reverse the portion of the judgment entered in favor of HJTA and Teyssier on the city's cross-complaints.

## A. *Proposition E Conflicts with Article XIII C, Section 2(b)*

In November 1986, the voters approved Proposition 62,[13] a *statutory* initiative that added sections 53720 through 53730 to the Government Code. (*Guardino, supra,* 11 Cal.4th at p. 231; *Roseville, supra,* 106 Cal.App.4th at p. 1183.) "The manifest purpose of Proposition 62 as a whole was to increase the control of the citizenry over local taxation by requiring voter approval of all new local taxes imposed by all local governmental entities: the measure defines broadly and inclusively both the taxes ([Gov. Code,] § 53721) and the entities ([Gov. Code,] § 53720) to which it applies." (*Guardino, supra,* 11 Cal.4th at p. 235.)

Government Code section 53721, the provisions of which were set forth in the text of Proposition 62 (see *Guardino, supra,* 11 Cal.4th at p. 272), states that "[a]ll taxes are either special taxes or general taxes. General taxes are taxes imposed for general governmental purposes. Special taxes are taxes imposed for specific purposes." Another provision of Proposition 62, codified in Government Code section 53722,[14] states in part that a "local government" may not impose a *special* tax unless and until the tax is submitted to the electorate and is approved by a *two-thirds* vote of the voters voting on the issue. A third provision of Proposition 62, codified in Government Code section 53723,[15] provides in part that a "local government" may not impose a *general* tax unless and until the tax is submitted to the electorate and is approved by a *majority* vote of the voters voting on the issue.

Although Proposition 62 defined the term "local government" to include a "chartered city,"[16] doubt existed as to whether the provisions of Proposition 62 applied to charter cities. One appellate court has stated that prior to the addition of article XIII C (discussed, *post*) to the California Constitution in 1996, charter cities were not required to obtain voter approval for new general taxes. (*Burbank-Glendale-Pasadena Airport Authority v. City of*

---

[13] The text of Proposition 62 is reprinted in full as an appendix to *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 272–273 [45 Cal.Rptr.2d 207, 902 P.2d 225] (*Guardino*).

[14] Government Code section 53722 provides: "No local government or district may impose any *special tax* unless and until such special tax is submitted to the electorate of the local government, or district and approved by a *two-thirds* vote of the voters voting in an election on the issue." (Italics added.)

[15] Government Code section 53723 provides: "No local government, or district, whether or not authorized to levy a property tax, may impose any *general* tax unless and until such *general* tax is submitted to the electorate of the local government, or district and approved by a *majority* vote of the voters voting in an election on the issue." (Italics added.)

[16] Government Code section 53720, subdivision (a) provides: "As used in this Article: [¶] (a) *'local government'* means *any* county, city, city and county, including a *chartered city* or county, or any public or municipal corporation." (Italics added.)

*Burbank* (1998) 64 Cal.App.4th 1217, 1227 [76 Cal.Rptr.2d 297] (*Burbank*).) In 1995, the California Supreme Court rejected various arguments that Proposition 62 was unconstitutional, but found it unnecessary to determine whether its voter approval provisions (discussed, *ante*) applied to charter cities. (*Guardino, supra,* 11 Cal.4th at pp. 260–261; see also *Roseville, supra,* 106 Cal.App.4th at p. 1183.)

In November 1996, California voters added article XIII C to the state Constitution by approving Proposition 218, the Right to Vote on Taxes Act. (*Burbank, supra,* 64 Cal.App.4th at p. 1226; see Historical Notes, 2A West's Ann. Const. (2004 supp.) foll. art. XIII C, § 1, p. 55.) As a *constitutional* initiative, Proposition 218 is binding upon charter cities. (*Roseville, supra,* 106 Cal.App.4th at p. 1185.) As already discussed, existing statutory law enacted as a result of voter approval of Proposition 62 prior to the adoption of Proposition 218 required counties and most cities to obtain a majority vote of the electorate to impose new general taxes or to increase or extend existing general taxes. (Gov. Code, § 53723.) In practical effect, as we shall now explain, the addition of article XIII C by voter approval of Proposition 218 constitutionally requires charter cities to obtain voter approval of general taxes. (*Burbank, supra,* 64 Cal.App.4th at p. 1226.)

Article XIII C, section 1, subdivision (a) defines a *general* tax as "any tax imposed for general governmental purposes." "A tax is general only when its revenues are placed into the general fund and are available for expenditure for any and all governmental purposes. [Citation.]" (*Roseville, supra,* 106 Cal.App.4th at p. 1185.) In contrast, section 1, subdivision (d) of article XIII C defines a *special* tax as "any tax imposed for specific purposes, including a tax imposed for specific purposes, which is placed into a general fund."

Under Proposition 218, the imposition of increase of a general tax must be submitted to the electorate and approved by a "majority vote." Specifically, article XIII C, section 2(b) provides in part: "No local government may impose, extend, or increase any *general* tax unless and until that tax is submitted to the electorate and approved by a *majority* vote." (Italics added.)

In contrast, under Proposition 218 the imposition or increase of a special tax must be approved by a two-thirds vote of the electorate. (*Roseville, supra,* 106 Cal.App.4th at pp. 1185–1186.) Specifically, article XIII C, section 2, subdivision (d) (hereafter article XIII C, section 2(d)) provides in part: "No local government may impose, extend, or increase any *special* tax unless and until that tax is submitted to the electorate and approved by a *two-thirds* vote." (Italics added.)

The issue presented here is whether Proposition E, by requiring a two-thirds vote of the city's electorate to approve a new general tax or an increase in an existing general tax, conflicts with the provisions of article XIII C, section 2(b) requiring a majority vote for approval of the imposition or increase of such a tax. Resolution of this question turns on the meaning of the term "majority vote" in article XIII C, section 2(b).

" 'We begin with the fundamental rule that our primary task is to determine the lawmakers' intent. [Citation.] In the case of a constitutional provision adopted by the voters, their intent governs. [Citations.] To determine intent, " '[t]he court turns first to the words themselves for the answer.' " [Citation.]' " (*People v. Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163].) " 'When statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it.' [Citations.]" (*People v. Benson* (1998) 18 Cal.4th 24, 30 [74 Cal.Rptr.2d 294, 954 P.2d 557].) "If 'the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.' [Citation.]" (*People v. Hazelton* (1996) 14 Cal.4th 101, 105 [58 Cal.Rptr.2d 443, 926 P.2d 423].)

Here, HJTA contends that Proposition E does not violate article XIII C, section 2(b) because "[its] plain language means a general tax would be unconstitutional if imposed without receiving *at least* majority approval." (Italics added.) HJTA also contends that the language of article XIII C, section 2(b) "cannot mean that a general tax would be unconstitutional if approved by more than a majority" because "there is no such thing as 'more than a majority.' " HJTA further contends that "[a] 'majority' is *anything* more than 50 [percent]" and thus "a tax receiving two-thirds of the vote necessarily also receives majority approval." In other words, HJTA maintains that article XIII C, section 2(b) permits the electorate of a local government like the city to require a supermajority two-thirds vote for the imposition or increase of a general tax, notwithstanding the "majority vote" language set forth in article XIII C, section 2(b), because a two-thirds vote *is* a majority vote.

We reject these contentions. Article XIII C, section 2(b) states that "[n]o local government may impose . . . or increase any general tax unless and until that tax is submitted to the electorate and approved by a *majority vote*. . . . " (Italics added.) This constitutional language clearly and unambiguously means that approval of a local government's imposition or increase of any general tax requires only a majority vote, and a two-thirds vote cannot be required for such approval. Had the drafters of article XIII C intended the term "majority vote" to mean "*at least* a majority vote" or a "majority vote, *including a two-thirds vote at the election of the electorate*," they easily could

have done so. That the drafters did not intend the term "majority vote" to expansively include a supermajority vote such as the two-thirds vote required by Proposition E is plainly shown by the fact that the express voting requirement they set forth in section 2(b) of article XIII C for the imposition or increase of any general tax is a "majority vote"; and, in contrast, the express voting requirement they set forth in section 2(d) of that article for the imposition or increase of any special tax is a "two-thirds vote." The plain language of section 2(b) and (d) of article XIII C thus indicates that the drafters of article XIII C intended that "majority vote" and "two-thirds vote" be treated as separate and distinct voting requirements: "majority vote" as a majority vote only and "two-thirds vote" as a supermajority vote that cannot be required for approval of either a new general tax or an increase in an existing general tax within the meaning of section 2(b) of article XIII C.

Decisional authority supports the city's argument that the term "majority vote" in article XIII C, section 2(b) means a majority vote only, and does not permit a requirement of a two-thirds vote. In construing Proposition 218, the Court of Appeal in *Roseville, supra,* 106 Cal.App.4th 1178, held that "[w]hen a local government asks the voters to approve a tax, it must decide whether to ask for a general tax or a special tax. *If it asks for a general tax, only majority approval is required*; but the local government must forgo any electoral advantage that might be gained from limiting the use of revenues to specific purposes. *If the local government asks the voters to approve a special tax*, it might gain an electoral advantage; but *a two-thirds vote is required for approval.*" (*Id.* at p. 1189, fn. omitted, italics added.) In so holding, the *Roseville* court indicated that the term "majority vote" does not include a "two-thirds vote" for purposes of article XIII C, section 2(b).

HJTA attempts to avoid the plain meaning of the language contained in article XIII C, section 2(b) by relying on the findings and declarations clause of Proposition 218, which states in part: "This measure protects taxpayers by limiting the methods by which local governments exact revenue from taxpayers without their consent." (Historical Notes, 2A West's Ann. Const., *supra,* foll. art. XIII C, § 1, p. 55.) HJTA asserts that this clause shows that Proposition 218 was "written and sponsored by taxpayer advocates not to protect a *city's* right to impose taxes, but rather to create and strengthen *taxpayers'* rights not to be taxed without voter approval." (Original italics.)

The findings and declarations clause, however, cannot be construed as evidence that the drafters of article XIII C, section 2(b) intended that the term "majority vote" set forth therein encompass a two-thirds supermajority vote that voters may select, in lieu of a majority vote, as the applicable voting requirement by means of a local ballot measure like Proposition E. The findings and declarations clause is silent as to the meaning of the term

"majority vote." In any event, the history of Proposition 218, as it pertains to the issue presented in this appeal, shows that the voters of California adopted Proposition 218, and thus section 2(b) of article XIII C, in part to apply to charter cities by constitutional amendment the voter approval requirements set forth in Proposition 62, including the requirement under Government Code section 53723 (see fn. 15, *ante*) that any general tax or any increase in such a tax not be levied by a local government without taxpayer approval by a majority vote of the electorate. Properly construed, article XIII C, section 2(b) is a constitutional provision that strengthens the right of taxpayers not to be taxed without voter approval by requiring that no general tax, and no increase in an existing general tax, be levied by any local government, including a charter city, without a majority vote of the electorate. Proposition 218 thus "protects taxpayers by limiting the methods by which local governments exact revenue from taxpayers without their consent" as the findings and declarations clause of Proposition 218 states.

■ In sum, Proposition E conflicts with article XIII C, section 2(b) by requiring that any new general tax or any increase in an existing general tax be approved by a two-thirds vote of the city's electorate, rather than by a majority vote as set forth in that section. Because the two-thirds voting requirement is the central provision of Proposition E, Proposition E is not reformable. Accordingly, we conclude the court erred to the extent it entered judgment in favor of HJTA on the city's cross-complaints challenging Proposition E. That portion of the judgment is reversed. The city is entitled to judgment in its favor on its cross-complaints.

B. *Proposition E Conflicts with Article XI, Section 3(a)*

The city also argues that Proposition E violates article XI, section 3(a). Specifically, the city asserts that although the annual property tax levy is the only general tax currently imposed by operation of the charter, Proposition E violates article XI, section 3(a) by requiring a two-thirds vote of the electorate for approval of another general tax, or an increase in an existing general tax, levied by means of a charter amendment. As an illustration, the city notes that the San Diego Municipal Code provides for the imposition and rate of a transient occupancy tax, which is a general tax. The city asserts that "[s]hould it ever be proposed to remove the imposition of such a tax from the Municipal Code to the Charter, or raise the rate of the tax pursuant to a Charter provision, Proposition E would require a two-thirds to undertake such an act." That requirement, the city argues, would violate article XI, section 3(a), which requires only a majority vote for approval of a charter amendment.

■ For reasons already discussed, we have concluded that article XI, section 3(a) grants voters the right to amend a city charter by majority vote.

Thus, to the extent a general tax may be imposed or increased by charter amendment, there is a present conflict between Proposition E, which purports to require a two-thirds vote for the approval of such an amendment, and article XI, section 3(a), which requires only a simple majority vote. In our view, it is immaterial that voter approval of such an amendment is not currently pending. We reject HJTA's contention that the city's cross-actions challenging Proposition E are premature.

## DISPOSITION

HJTA's motion for judicial notice of the June 1970 ballot pamphlet for statewide Proposition 2 is granted. The judgment is affirmed in part and reversed in part. The portion of the judgment in favor of HJTA and Teyssier on their complaints challenging Proposition F is affirmed, and the portion of the judgment in favor of HJTA and Teyssier on the city's cross-complaints challenging Proposition E is reversed. The city is entitled to judgment on its cross-complaints. The matter is remanded with instructions to vacate the judgment and enter a new judgment that is consistent with this opinion. The parties shall bear their own costs on appeal.

McDonald, J., and O'Rourke, J., concurred.

A petition for a rehearing was denied July 22, 2004, and respondents' petition for review by the Supreme Court was denied September 22, 2004. George, C. J., did not participate therein. Baxter, J., was of the opinion that the petition should be granted.